A. V. MILLIKIN, ALIAS AVERY W. JACKS, ALIAS W. A. COATZ, v. THE STATE.

No. 10862.    Delivered May 11, 1927.

Rehearing denied June 15, 1927.

**1.—Murder—Grand Jury—Reassembling—Held Proper.**

Where, on a trial for murder, the grand jury which returned the indictment against appellant having been discharged for the term and appellant's motion to quash the indictment having thereafter been sustained, the court reassembled the grand jury, and one member of same failing to appear the court caused another juror to be summoned to complete the panel, this procedure was proper. See Art. 372, C. C. P. Following Trevino v. State, 27 Tex. Crim. App. 372, and other cases cited.

**2.—Same—Continued.**

However, if the grand jury has only been recessed, the trial court is without authority to complete the panel in the event any of the jurors fail to appear at the end of said recess, there being no statutory provision authorizing a completion of the panel under such circumstances.

**3.—Same—Special Venire—Motion to Quash—No Error Shown.**

Where appellant presented a motion to quash the special venire presented to him, and after overruling same, the court on his own motion changed the venue to another county, the changing of the venue eliminates any error that might have been committed in refusing his motion to quash the special venire.

**4.—Same—Special Venire—Delay to Examine List—Properly Refused.**

Where on a change of venue the appellant, when his case was called, requested two days' time in which to investigate the personnel of the special venire, on account of his counsel being non-residents, and it appears that counsel for appellant were served in proper time with the venire list, and were assisted in selecting the jury by a resident attorney of the county of the trial, who had knowledge and acquaintance with said jurors, no error appears in refusing this delay, as requested.

**5.—Same—Writ of Certiorari—Properly Refused.**

Where appellant requested a writ of certiorari to the clerk of Comal County to bring forward all original orders, etc., and the court did cause the clerk of Comal County to appear with all records requested by appellant, no error is shown in the refusal of the writ of certiorari.

**6.—Same—Passing on Talesmen—Delay Properly Refused.**

Where, on a trial for murder, the special venire having been exhausted, and talesmen summoned, there was no error in refusing to grant appellant two days' time within which to investigate the list of talesmen. See Bradley v. State, 96 Tex. Crim. Rep. 81.

**7.—Same—Evidence—Admission Of—Harmless, If Error.**

The admission of testimony as to the contents of a note-book found on the person of appellant when arrested, containing some names and numbers of no particular cogency to the state's case, was harmless, if erroneously admitted.

**8.—Same—Evidence—Analysis of Blood Spots—Properly Received.**

Where, on a trial for murder, there was no error in permitting a physician to testify that he had examined some spots found on the pistol in appellant's possession when arrested, and that such spots, under a microscope, showed to be red blood cells. Following Howard v. State, 242 S. W. 739.

**9.—Same—Argument of Counsel—Qualification of Bill—No Error Shown.**

Where appellant complains of the statement of the state's attorney in his argument to the jury that he had many times in the trial of the case yielded legal rights which he believed the state should have had, and the court qualifies appellant's bill with the statement that the argument was in reply to the argument of appellant's counsel, no error is shown.

**10.—Same—Evidence—Held Sufficient—Supports Conviction, With Death Penalty.**

Under the Constitution and laws of this state it is the province of the jury to pass upon the credibility of the witnesses, and the weight to be

given to their testimony, and not the prerogative of the appellate court to interfere with their finding on questions of fact, when there is evidence authorizing same. A careful and thorough examination of this record impresses this court that the evidence supports the conviction, howbeit the death penalty was assessed.

### ON REHEARING.

**11.—Same—Reassembling Grand Jury—Discretion of Trial Judge.**

Where a grand jury has been discharged for the term, and is directed by the court to reassemble, the method of resummoning and filling the panel should any juror fail to appear, is within the discretion of the trial judge, and there is no necessity for waiting for three days for the appearance of the absent juror or jurors to appear, Art. 345, C. C. P., having no application to the reassembling of a grand jury, after being discharged.

Appeal from the District Court of Caldwell County, on a change of venue from Comal County. Tried below before the Hon. M. C. Jeffrey, Judge.

Appeal from a conviction of murder, penalty assessed at death. The opinion states the case.

*Conger & Conger,* for appellant. On admission of evidence as to spots on appellant's gun, he cites: Taylor v. State, 41 Tex. Crim. Rep. 148; Diaz v. State, 62 Tex. Crim. Rep. 317, and Cole v. State, 45 Tex. Crim. Rep. 225, 75 S. W. 537.

*Fred L. Blundell,* District Attorney; *Tom Gambrell,* County Attorney of Caldwell County; *Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

BAKER, JUDGE.—The appellant was convicted of murder, and his punishment assessed at death.

The record discloses that the appellant was charged by indictment in the District Court of Comal County with murdering Virginia Petty by shooting her with a gun on or about the 22nd day of May, 1926; that the District Judge of said county, upon his own motion, changed the venue from Comal County to Caldwell County. We infer from the record that it was the contention of the state that deceased, at the instance of appellant, went with him in her automobile from the city of San Antonio to New Braunfels, and that the appellant, on the bank of the river in or near the city of New Braunfels, after assaulting the deceased criminally, shot her and then stole her diamond ring and purse.

The appellant failed to testify in his own behalf and introduced only one witness, Paula Nelson, who testified that a man registered under the name of A. V. Millikin at the Plaza Hotel

in New Braunfels on May 22, 1926, the date of the alleged homicide, about 11 o'clock at night and requested that he be called at 4:30 or 5:00 o'clock the following morning.

Briefly stated, the testimony relied upon by the state for a conviction was to the effect that prior to the date of the alleged homicide the appellant was apparently negotiating with deceased, through a real estate firm, for the acquisition, either by purchase or trade, of her residence in the city of San Antonio; that on the morning of the alleged homicide appellant and deceased met at said real estate office for the purpose of closing the trade; that in the afternoon appellant communicated with deceased from said office over the telephone; and that appellant and deceased met about 5:00 o'clock in the afternoon and went in deceased's car from San Antonio to New Braunfels. The state's witness Givens testified that he served appellant and deceased at a New Braunfels cafe about 7:00 p. m., and that at said time, according to his recollection, deceased was wearing a ring and carrying a purse or handbag of some kind. A car similar to that owned by deceased was seen on the streets of New Braunfels about 9:00 p. m. going in the direction of the river, where deceased's body was discovered on the following morning. Other witnesses testified for the state to the effect that about 11:00 p. m. on said night they heard the report of a gun in the direction of where deceased's body was subsequently found, and that later in the night appellant called at the house of his relative, Mrs. DeLoach, and sought aid in getting his automobile started, but that he was unsuccessful owing to the fact that his relative and her husband had gone to the picture show. The state's witnesses further testified that after hearing the gun report, and at intervals thereafter, they heard an automobile "buzzing" as if an attempt was being made to start it. Additional testimony was introduced by the state showing that on the following morning, about 6:00 o'clock, the appellant again appeared at the home of Mrs. DeLoach, seeking assistance in getting his car started, and finally secured the assistance of a young man by the name of Owens, who went with appellant to the car, which was in close proximity to the place where deceased's body was afterward found. Owens started the car for appellant, and was informed by him that he "should have gotten away from there the night before and was due to be on the border." Owens also testified that appellant appeared to be nervous and excited at this time. The appellant was seen in San Antonio about 8:00 or 8:30 o'clock on the morning of May 23; he drove deceased's car into her garage and walked rapidly away from the premises.

Mrs. Sampson, a witness for the state, testified that she took breakfast with appellant in San Antonio on the morning of May 23, at his invitation, and drove with him into the country in her car, during which time appellant was armed with a pistol and had in his possession a lady's diamond ring. The witness further testified that appellant insisted that she drive upon streets and roads which were not so public, and appeared to be very nervous. She also testified that she and appellant spent the night together in a San Antonio hotel, and that the landlady, before they arose on the following morning, informed appellant that the officers were inquiring for him, whereupon appellant dressed hurriedly and left the hotel, which was the last time she saw him until the day of his arrest, a week after the alleged homicide. Additional testimony was introduced by the state to the effect that appellant, a day or two after the alleged homicide, attempted to pawn for $200 a lady's diamond ring worth from $1,200 to $1,400, but when identification was demanded he left and did not return. On the morning of May 23, 1926, deceased's body was found upon the banks of the river in or near the city of New Braunfels. Her clothes were torn in front, the print of teeth could be seen on her breast, and she had been shot in the back of the head with a small caliber pistol or gun, which had been fired at close range and left powder burns on her body. There was a dark circle around one of her fingers on the left hand, such as would be made by a ring, and there were scratches on said finger. No purse was found near the body of deceased. The appellant was arrested on May 29, a week after the alleged homicide, by the officers in the city of San Antonio and a 38-caliber pistol was taken from his person at said time. On the handle of this weapon were certain specks which, it was learned upon analysis, had been made by blood. There was also taken from him at said time a book containing references to certain towns between San Antonio and the Rio Grande border. This is a statement of practically all the salient facts introduced in evidence.

The record contains eight bills of exception. In bill No. 1 appellant complains of the action of the court in refusing to quash the indictment, it being alleged that said indictment was not found, returned and presented into court by a legally constituted grand jury. It appears from the bill that after an indictment had been returned by the grand jury in Comal County and after the court in said county had discharged the grand jury for the term and this case had been called for trial, appellant's counsel moved to quash said indictment, which motion was sus-

tained by the court.   On the same day, in the evening thereof, the court issued a writ commanding the sheriff to reassemble the grand jury on the following morning.   The record shows that the sheriff served all the grand jurors and that on the following morning, in response to said service, all of the grand jurors except one appeared in open court.   The judge completed the grand jury by summoning and placing thereon one Walter Wiedner.   It is the contention of the appellant that by reason of the court's action in placing the said Wiedner on the grand jury in lieu of the juror who failed to appear, this constituted an illegal grand jury, which rendered the instant indictment void.   After a careful examination of the authorities on this question, including those cited by appellant and those relied upon by the state, we are not in accord with this contention and believe that the court was fully authorized, under the facts in this case, to complete the grand jury by adding thereto the said juror Wiedner.   Art. 372, C. C. P., is as follows:

"A grand jury discharged by the court for the term may be reassembled by the court at any time during the term.   If one or more of them fail to reassemble, the court may complete the panel by impaneling other men in their stead in accordance with the rules provided in this chapter for completing the grand jury in the first instance."

This article, which clearly covers the facts in the instant case, has been upheld by this court in Trevino v. State, 27 Tex. Crim. App. 372, 11 S. W. 447; Matthews v. State, 42 Tex. Crim. Rep. 31, 58 S. W. 86; Ex Parte Love, 49 Tex. Crim. Rep. 475, 93 S. W. 551; Leech v. State, 63 Tex. Crim. Rep. 339, 139 S. W. 1147, and Wright v. State, 86 Tex. Crim. Rep. 434, 217 S. W. 152. A distinction has been clearly drawn by this court between a situation where the grand jury has been discharged for the term and resassembled at the same term, and that in which the grand jury has only been recessed during the term and not discharged. In the former instance it is held that the court has a right to complete the panel when some of the jurors fail to reassemble, while in the latter case, where the grand jury has only been recessed, this court holds that the trial court is without authority to complete the panel in the event any of the jurors fail to appear at the end of said recess.   This, in our opinion, is due to the fact that in the first situation Art. 372, C. C. P., gives the trial court such authority, whereas in the latter situation there is no statutory provision authorizing a completion of the panel under such circumstances.   There was therefore no error in the action of the court in reassembling the grand jury and adding the juror Wiedner thereto, under the facts above stated.

In bill of exception No. 2 appellant complains of the refusal of the court to sustain his motion to quash the special venire presented to him in the District Court of Comal County, on account of alleged irregularities in selecting said special venire. This bill involves the method and manner of selecting a special venire in Comal County, all of which occurred prior to the change of venue by the court to Caldwell County. It appears that the court, after overruling appellant's motion to quash the venire, attempted to get a jury in Comal County and discovered a fair trial could not be obtained, whereupon he changed the venue on his own motion to Caldwell County. The court's action in changing the venue to Caldwell County passes this question out of the case.

Bill No. 3 complains of the action of the court in refusing to grant appellant's motion to postpone the case for two days in order to give him time to investigate the special venire summoned and tendered to him for the purpose of selecting a jury in Caldwell County, it being contended that the appellant and his attorneys were strangers in Caldwell County and needed this time to familiarize themselves with said venire, so that they might intelligently make the necessary challenges thereto. The court, in qualifying this bill, copies from an affidavit made by the Hon. C. F. Richards, a practicing attorney at Lockhart, and attached to the state's reply to appellant's motion for new trial, to the effect that he had lived in Caldwell County for thirty years and was well acquainted with the people of said county; and that he assisted appellant's attorneys in passing upon the venire, and gave to them the full benefit of his views, knowledge and acquaintance with said jurors. It is further shown in the qualification that the list of veniremen had been duly served upon appellant for the proper time, and that his attorneys had been notified of the date on which the case would be called for trial a long time prior thereto. This bill, as qualified, shows no error.

Bill No. 4 complains of the action of the court in refusing to issue a writ of certiorari to the Clerk of the District Court of Comal County, requiring him to perfect the record by showing the number of indictments returned in Comal County by the grand jury, including the one against appellant, and by showing fully the order overruling the motion to quash the special venire in said county. The court qualifies this bill by stating that when said motion was presented he granted to the District Attorney time within which to have the District Clerk of Comal County come to Lockhart and bring with him all of his orders,

judgments and records pertaining to this cause, and that said District Clerk did appear in open court with these records, made affidavit, and testified that the transcript attached to the state's reply to the defendant's motion for certiorari contained a correct transcript and record of all the orders, decrees, etc., made in the District Court of Comal County in said cause. The qualification further states that after the evidence was heard on the contested motion, and with all the records before the court, said motion was overruled. This bill, as qualified, shows no error.

Bill of exception No. 5 complains of the action of the court in refusing to grant the appellant's motion for two days within which to investigate and inquire into the talesmen summoned in this cause after the special venire had been exhausted. This bill is qualified by the court, who quotes from the affidavit of C. F. Richards, mentioned in the qualification to bill of exception No. 3, to the effect that the court granted appellant five hours and fifteen minutes within which to examine the list of talesmen summoned by the sheriff, and that the said C. F. Richards, a Lockhart attorney, assisted appellant's counsel in passing upon said talesmen, giving to them all the information that he had concerning same. This bill presents no error. In Bradley v. State, 96 Tex. Crim. Rep. 81, 256 S. W. 292, this court held that appellant was not entitled to "one day" before being called upon to pass on talesmen, after a special venire had been exhausted.

In bill No. 6 complaint is made to the action of the court in permitting the state's witness Bartholomae to testify that a small book which he took from appellant at the time of the latter's arrest contained different names and numbers in it and contained the name of Batesville, a town near the Rio Grande border, "going through Pearsall down to Batesville." The appellant objected to said testimony on the ground that it was immaterial and prejudicial. The court's qualification to this bill states that the witness Owens testified for the state, without objection, that while he was helping appellant start his car in New Braunfels, on the morning after the alleged homicide, appellant told him that he "ought to have been out the night before and down on the border by then." We think the objection urged to this testimony went more to the weight than to the admissibility of same, and that no error was committed by the court in overruling said objection, under the facts in this record and as presented in this bill.

Bill No. 7 complains of the action of the court in permitting the state's witness Dr. Wright to testify that he removed the

spots found on appellant's pistol, examined them under a microscope, "and found red blood cells." The appellant objected to this testimony on the ground that there was no evidence to show whether this was human blood or animal blood, and that this "was a contradiction and impeachment of the state's own witness." The court's qualification to this bill shows that Dr. Wright was qualified to give this testimony. We think there was no error committed in admitting the testimony, and that the objection urged thereto went more to the weight than to the admissibility of same. This identical question was decided against appellant's contention in the case of Howard v. State, 242 S. W. 739.

In bill No. 8 appellant complains of the action of the District Attorney in stating to the jury, in his argument, that he had many times in the trial of this case yielded legal rights which he believed the state should have had. Appellant's counsel objected to this argument on the ground that there was nothing in the evidence to show that the state had yielded anything, and that same was prejudicial. The court qualifies this bill by stating that appellant's counsel, in arguing the case to the jury, detailed the circumstances of another case within his own knowledge where a defendant was convicted upon circumstantial evidence and it later developed that he was innocent, to which argument the District Attorney objected, but withdrew his objection and requested the court to permit counsel to proceed with his argument. The closing argument of the District Attorney objected to in this bill of exception was to the effect, according to the qualification, that he had withdrawn his objection to the argument made by appellant's counsel because the state was asking the death penalty and wanted appellant to have all that was due him in the trial. The qualification further shows that when appellant's counsel objected to the statement of the District Attorney, the court instructed the District Attorney to stay in the record, and instructed the jury to disregard such argument. This bill presents no error.

The appellant complains that the court erred in refusing to grant his motion for new trial for the reason that the evidence was insufficient to sustain the conviction and penalty assessed in this case. After a careful examination of all the evidence introduced, we are unable to reach the conclusion that the jury were not warranted in finding the appellant guilty and in assessing the punishment set out in their verdict. Under the Constitution and laws of this state it is the peculiar province of the jury to pass upon the credibility of witnesses and the weight to

be given to their testimony, and it is not the prerogative of the appellate court to interfere with their finding on questions of fact where there is evidence authorizing same.

Having reviewed the entire record, and finding no error therein, we are constrained to hold that the judgment of the trial court should be affirmed, and it is accordingly so ordered.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

Morrow, P. J., not sitting.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE. — Appellant, on motion for rehearing, again urges that the court below should have quashed the indictment based on appellant's contention that it was returned by an illegal grand jury. A charge of murder was pending against appellant on a previous indictment and the trial had been set down for the 15th day of September at which time a motion was filed to quash the indictment. Upon request of the District Attorney for time to investigate the point of law involved the court granted until 10 o'clock September 16, and recessed court until that time. Presumably the court and District Attorney concluded that the motion to quash was good. About 5:30 o'clock in the afternoon of September 15 the court directed the sheriff to reassemble the grand jury which had been discharged for the term. The first ground now urged against the indictment returned by the reorganized grand jury is that the court having recessed until 10 o'clock on September 16 was without power to make an order on September 15 directing the reassembling of the grand jury. We think there is no merit in this contention. If the court had undertaken to make some order in the particular case which had been passed to the next day appellant might have had just ground of complaint.

All the grand jurors were summoned by the sheriff to reassemble at 8 o'clock on the morning of September 16. Eleven responded. Another juror was impaneled in lieu of the one man absent, and the grand jury reorganized, and the indictment in the present case returned against appellant. Art. 372, C. C. P., regarding the reassembling of a grand jury which has been discharged for the term is silent as to the character of summons by which they may be recalled. Appellant's second con-

tention is that Art. 345, C. C. P., which requires three days' notice to grand jurors prior to the first day of the term of court should be read into Art. 372. Concisely stated, his proposition is that if all the grand jurors are summoned to reassemble and some fail to respond that the court is powerless to impanel other jurors in place of the absentees until the expiration of three days; in other words, the court must remain idle for three days to ascertain if the absent grand jurors will in that time respond to the re-summons. We cannot give assent to such contention. Art. 372, C. C. P., being silent as to the method of reassembling a discharged grand jury, and silent also as to the required notice therefor, discretion regarding such matters is necessarily lodged in the trial judge, and unless his acts be such as to show a clear abuse of such discretion, one indicted by such reorganized grand jury has no ground of complaint.

The motion for rehearing is overruled.

*Overruled.*