## MARTIN KUYKENDALL V. THE STATE.

No. 22034.  Delivered April 1, 1942.

The opinion states the case.

*McWhorter, Howard & Cobb,* of Lubbock, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The conviction is for a violation of House Bill No. 190, Chapter 17, Acts of the 46th Legislature, Regular Session, 1939, being Article 567b of Vernon's Ann. Penal Code, known as the "Bad Check Law." The punishment assessed is confinement in the State penitentiary for a term of two years.

Appellant first complains of the action of the trial court in declining to sustain his motion to quash the indictment for

various reasons stated. We have examined the indictment and it appears to charge the offense in the language of the statute which is ordinarily sufficient.

Appellant next challenges the sufficiency of the evidence to justify and sustain his conviction. In order that this opinion may properly reflect the basis of our conclusion on the question, we deem it proper to briefly state the salient facts proven upon the trial.

The State's evidence shows that appellant was doing business at Plainview, Texas, under the trade name of Plainview Hog & Cattle Company; that he was and had been engaged in buying and selling hogs and cattle for a period of four or five years at the time of the transaction in question; that he had two or three parties engaged to purchase hogs and cattle for him. He did all of his business through the City National Bank of Plainview, Texas. During the months of November and October, 1940, his business transactions, that is, receipts and disbursements, according to the bank records, exceeded several hundred thousand dollars, and his account at the bank was very active in the withdrawing and depositing of funds. It appears from the record that on the 3rd day of December, appellant purchased from the Sweetwater Livestock Auction Commission Company a number of cattle amounting to the sum of $3,100.00 and drew a check through the City National Bank of Plainview against the account of the Plainview Hog & Cattle Company in payment of said cattle; that on the 10th day of December, he again purchased from the same company 104 head of cattle for the sum of $2,966.65 and drew a check on the Plainview Hog & Cattle Company through the City National Bank of Plainview, which he gave in payment of the cattle. This check, together with the one for the sum of $3,100.00, dated December 3rd, were deposited with a bank at Sweetwater, Texas. About the 16th day of December, both checks were returned unpaid on account of insufficient funds. When the checks "bounced back," O. L. Nichols, one of the members of the Sweetwater Livestock Auction Commission Company, went to Plainview to make some investigation as to why the checks were not paid. He learned that the Big Springs Livestock Commission Company had sued out a writ of garnishment and had it served on the City National Bank of Plainview. The bank paid the check in the sum of $3,100.00 dated December 3rd, but by reason of having been garnisheed could not pay the other check. On December 10th, according to the bank record, there

was on deposit to the credit of the Plainview Hog & Cattle Company the sum of $4,828.26, and at the close of business on that day there was a balance of $905.59. On the following day, there was the sum of $2,461.93. On December 12th, appellant deposited $6,935.45, but at the close of business for that day, there was only a balance of $1,480.27. On December 13th, he had $6,936.23 but at the close of business on that day, there was a balance of $3,146.46. At the close of business on December 14th, there was a balance of $3,735.15, and at the close of December 16th, a balance of $2,442.41. Just how many checks were paid by the bank out of the funds on deposit with it from December 10th to December 16th which were given since the one in question was drawn, is not disclosed by the record.

George Schriber, Cashier & Vice-President of the City National Bank of Plainview, testified that if the check dated December 10th had been presented to his bank on that date, it would have been paid. The check in question was presented for the first time for payment on Monday, December 16th. When the bank opened for business on that day, it had on deposit to the credit of the Plainview Hog & Cattle Company the sum of $3.735.15; that during the day there were two deposits, one of $1,771.19 and another of $862.21, aggregating $2,633.40 which, added to the $3,735.15 carried over from the preceding day, made a total of $6,368.55. However, at the close of business for that day, there was only a balance of $23.32. On the following day, two deposits were made, making a total of $4,118.85, but at the close of that day's business, there was only a balance of $159.10. On the 16th day of December, when the check in question came to the City National Bank of Plainview, many other checks which had been given by appellant's employees also came in, some of which, it seems, were paid, but quite a number of them totaling approximately $7,400.00, including the one in question, were not paid and were returned.

The evidence further shows that on the 13th day of December, when the check in question should have reached the City National Bank of Plainview by going through the ordinary channels, the Plainview Hog & Cattle Company had sufficient funds on deposit with said bank to have paid the check in question, together with all other checks that came in. The pertinent part of the testimony given by Mr. Schriber on the subject is as follows:

"On December 13th they had a balance of $3,146.46. At the close of business on December 14th they had $3,735.15. If the

check in question had been presented on either the 13th or the 14th of December, it would have been paid along with all other checks that came in."

The witness did not know whether the checks that were paid and charged against the account on December 10th, 11th or 12th, and so on, were written before or after December 10th.

There is not any evidence which shows how many checks were paid by the bank out of the account of the Plainview Hog & Cattle Company on December 10th, 11th and 12th that were given subsequent to the one in question; nor is there any evidence which shows how much money on deposit with said bank was tied up by the garnishment proceeding, and whether or not the basis of the garnishment proceeding was an obligation which was incurred prior or subsequent to the time the check in question was given. The State was required to prove that the Plainview Hog & Cattle Company did not have sufficient funds on deposit with the bank to have paid the check at the time it should have reached the bank through the ordinary channels regardless of how many checks were drawn and paid, since the check in question was given. The intent to defraud is the gist of the offense and this intent must have existed at the time the check in question was given. Consequently, the State was required to prove facts from which such an intent is deducible beyond a reasonable doubt, in the absence of which a conviction would not be justified. In this respect the evidence fails to meet the requirements of the law. There is no affirmative evidence that the account was not reduced or depleted by the payment of checks which were drawn subsequent to the one in question. By analogy, the case of Jones v. State, 123 Tex. Cr. R. 437, supports the opinion here expressed.

Having reached the conclusion that the evidence is insufficient to sustain the conviction, the judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.