Appellant was charged under Art. 567b, P. C., of a violation of what is commonly called the "bad check law" and upon his conviction was assessed a term of five years in the penitentiary, and he appeals therefrom.
We are early met herein with motions to quash the indictment because of the fact that same was found by what is termed an illegal grand jury, that is to say, that at the date of the presentation of this indictment into the court, two of the members of the grand jury were not qualified as such because they had failed to pay their poll tax prior to the first day of February, 1949; and we are cited to the statute (Art. 339, C. C. P.), relative thereto and the decisions thereunder. However, it is of interest to note that upon the empaneling of this grand jury on January 10, 1949, all twelve of the grand jurors had paid their poll taxes and were not at such time subject to an objection for a failure to pay such. Therefore, it follows that when empaneled such was a legal grand jury. The question then arises as to whether such after acquired illegality would affect their entire action in the return of indictments after the last day of January, 1949.
We held in Conklin v. State, 144 Tex.Crim. R., 162 S.W.2d 416, that upon the empaneling of such grand jury, anyone interested in such proceedings had the duty of challenging any person presented as such grand juror who had not paid a poll tax, being subject to such payment, provided such challenger *Page 243 
is enlarged on bond to await the action of such jury, and it would become his duty to challenge such juror. In that case, however, the offense had not been committed at the time of the organization of the grand jury, and of course, the accused was not under such bond and was not required by bond to await the action of such jury.
In the present case, no such grounds existed at the time of their organization, all being qualified, and such dereliction upon the part of these two members did not take place until February 1, 1949.
The minutes of the term of court show that such court was opened on January 3, 1949; that on January 10, 1949, the grand jury was summoned to appear in court; that on January 17, 1949, twelve men were selected and sworn in as grand jurors for the January term of court; that on the same day they were granted permission of the court to stand adjourned until January 31, 1949; that on said date they were again granted permission to stand adjourned until February 21, 1949, on which last-named date they returned into open court the indictment herein which is the basis of the complaint.
It is shown by the record that appellant had been previously filed upon in a justice court for this same offense on December 17, 1948, and a warrant issued from the justice court; that an examining trial was waived and bond set at $1200.00; that he made bond on December 22, 1948, to await the action of the grand jury, and was on bond until the indictment was found; that he was on bond at the time this grand jury was empaneled and so remained until after the return of this indictment. It is shown by such bill that this grand jury was empaneled on January 17, 1949, and it seems that appellant's attorney was then present in court and had a list of the grand jurors; that this attorney was also present in court on February 14, 1949, which was one week prior to the finding of this indictment; that no one offered any challenge at such time, either to the array or any certain grand juror. The appellant testified for the purpose of this bill as follows:
"I am S. B. Jones. I am the defendant in Cause No. 11307 styled State of Texas vs. S. B. Jones. I live in Hearne, Texas. I lived in Hearne, Texas, during January and February of this year. That is in Robertson County, Texas. Yes, I was charged with several offenses against the Penal Law of this State during the month of December, 1948. Yes, sir, I was arrested and placed in jail here in Franklin. Yes, I made bond. I made bond *Page 244 
and was released either the 22nd or 23rd of December. Yes, sir, I was to appear before the District Court at the January Term, 1949. Yes, sir, I was present on January 7, 1949, and was in attendance at the time the Grand Jury was impanneled. No, sir, I believe that there was no indictment returned charging me with any violation in January, 1949. Yes, sir, I was in attendance at all times, Yes, sir, I was here on February 7, 1949. I do not believe that the Grand Jury met at the time. Yes, sir, I believe I was in attendance on February 14, 1949. No, sir, the Grand Jury did not met on February 14th. I appeared on February 7, and 14th, to appear before the body and to file about the Grand Jurors that were acting in investigating the case. Yes, sir, to make a challenge that they did not have a poll tax receipt. No, sir, the Grand Jury did not meet on either the 7th or 14th. I did not have any notice, I never did have any notice that the Grand Jury was meeting on February 21st, I first knew that the Grand Jury met and returned an indictment when I heard it over the radio. It was between five and six o'clock. In the afternoon. It was the 21st day of February, I believe. If I had of had a notice I would certainly have been here, and called the court's attention to the fact that the poll taxes of some of the jurors were not paid. Yes, sir, this is the first opportunity that I have had in presenting this."
On cross-examination, appellant testified:
"No, sir, I did not file in this Court a motion or objection to any of the men serving on the Grand Jury on the 7thor January. No, I did not file anything, I did not have an opportunity to file on the 7th of February. No, sir, I was not given an opportunity to file anything on the 14th of February. I don't believe the Judge was here, he was here, the date I can't recall. The 7th of February and the 14th of February, he was here, but I did not come up on the 21st of February.
It appears from the above that although present each week in court, appellant never seemed to be thus present when the grand jury was in session. It also appears therefrom that appellant seemed to know when these two grand jurors failed to pay their poll tax prior to February 1, 1949, and yet he failed to challenge such jurors, not only prior to their finding an indictment against him on February 21, 1949, but waited until the calling of this case for trial on April 11, 1949.
There is no question that during the month of January, 1949, these two grand jurors were unobjectionable in so far as their poll tax payment was concerned. Appellant made no objection *Page 245 
to either the array or to any certain prospective juror as provided by statute, Arts. 358 and 359, C. C. P. Nor did he make any such objections on or after February 1, 1949, although it seems that he was in possession of knowledge that two members thereof had failed to pay their poll tax for such year, and he failed to challenge them or either of them. Therefore, it appears that appellant did not comply with the law as laid down in Art. 362, C. C. P., by not following the mode of challenge therein prescribed. See Armentrout v. State,138 Tex. Crim. 238, 135 S.W.2d 479; Turner v. State, 116 Tex. Crim. 168,32 S.W.2d 835; Tyson v. State, 146 Tex.Crim. R.,171 S.W.2d 496; Winn v. State, 138 Tex.Crim. R., 135 S.W.2d 118. See also 21 Tex. Jur. p. 98, sec. 17.
We pretermit a further discussion of whether or not after a grand juror upon his empanelment as such as a legal grand juror, it was encumbent on him to discharge the duty of paying a poll tax in order to continue to be such legal grand juror during the remaining portion of the term of court. We do hold that appellant waived his right to challenge such jurors, and we overrule his Bill No. 2.
Bill No. 1 relates to the failure of the clerk to enter upon the minutes certain procedural matters such as the empaneling of the grand jury and the different adjournments from time to time of that body, as well as their return of the indictment herein. This term of court began on January 3, 1949, and continued until July 2, 1949, and we have here present in the record the minutes of such term which, however, were not spread on the minutes at the time of this trial on April 11, 1949. We therefore overrule Bill No. 1.
Bill No. 3 complains because the trial court failed to quash the second count of the indictment and sets forth many grounds requesting the trial court to quash such count therein. The statute makes it unlawful for any person with intent to defraud to obtain any money, goods, service, labor, or any other thing of value by giving or drawing any check, draft, or order upon any bank, person, or corporation, if such person does not at the time said check, draft, or order is so given or drawn, have sufficient funds with such bank, firm or corporation with which to pay such draft or order, and all other checks, drafts, or orders upon said funds outstanding at the time such check, draft or order was so given or drawn. The remaining portion of such Art. 567b, P. C., deals with the method of proving such matter. *Page 246 
We think that the count complained of applied and followed the statute and charged an offense thereunder. This statute (Art. 567b, P. C.) supersedes Section 4 of Art. 1546, P. C., 1925, and an offense thereunder no longer comes under the head of swindling but is called obtaining money, goods, etc., with intent to defraud by giving or drawing any check, draft, or order without sufficient funds, which enactment repealed such section 4 of Art. 1546, P. C., 1925. See Acts 46th Legislature, Chap. 17, p. 246, et seq.
There are many objections raised to such count but space forbids our discussing each of them. Suffice it to say that we think the count charges a violation of the statute and that it is a violation of such statute to give a check, draft, or order upon a bank where such giver did not have sufficient funds with which to pay the same. The elements of a swindle do not appear. It is usually sufficient to charge the offense in the language of the statute. See Kuykendall v. State, 143 Tex.Crim. R.,160 S.W.2d 525.
It is contended that appellant received no money from the presentation of said check to the bank. It will be noted that he did receive a deposit slip evidencing a credit in that bank for the sum of $10,850.00, and with such credit he purchased exchange for such sum. The statute does not relate to money alone but goes further and says, "or other thing of value." This deposit slip seems to have been valuable enough to purchase negotiable exchange in such sum.
It is also argued that there was no reliance placed upon any statement made to such bank or any of its agents relative to whether or not appellant had the money in the McAllen State Bank, but that such reliance is negatived by the testimony of Mr. Crane who testified that some person in the McAllen State Bank told him (Crane) over the telephone that such check would be paid. This new statute, Art. 567b, P. C., makes the refusal to pay an account for insufficient funds prima facie evidence of an intent to defraud; and its return under such circumstances is prima facie proof of insufficient funds therein. It will be noted that the presentation of such check without being possessed of sufficient funds in such drawn on bank is prima facie evidence of an intent to defraud, which would be rebuttable, however, as would any other intent where same is a portion of the offense. See Coffee v. State,148 Tex. Crim. 71, 184 S.W.2d 278. We think the fact still remains that appellant gave this check with an intent to defraud, and did *Page 247 
defraud the First State Bank of Franklin out of this sum of money as charged in Count 2 of the indictment.
The bills of exception relative to an attempt to quash Counts 1 and 3 of the indictment need not be here considered. The careful trial court submitted only Count No. 2 to the jury, the other two counts thus passing out of the case.
We express the opinion that the trial court committed no error in refusing appellant's request for a peremptory instruction.
It is also suggested to this court that appellant's actions herein were a part of a check "kiting" scheme whereby no deception was practiced upon the complaining bank in that such bank knew from a perusal of appellant's account therein that many large checks were being given by him on divers banks in other cities with no substantial balance in such banks from which such checks could be paid. We gather from such argument that such check "kiting" was known to the First State Bank of Franklin and the appellant also, and that no intent to defraud could be found or presumed because of the failure to pay this check on account of insufficient funds; in other words, that such First State Bank of Franklin knew, or ought to have known, that appellant had no funds in the McAllen State Bank to pay such check and therefore, they were not defrauded by honoring such check. The testimony relied upon to show a lack of intent to defraud rests in the high finance reflected in appellant's account in such First State Bank of Franklin, and the peculiarities there shown in that he made large deposits on one day and soon thereafter, usually two days, he made large withdrawals therefrom; and again, he would pursue the same tactics for about thirty days. This seems to have evidenced a large amount of business, but we fail to see wherein such volume would necessarily mean that these checks were "hot" and not drawn upon actual funds in other banking institutions. True it is that the First State Bank of Franklin earned and collected certain charges for the issuance of its exchange for the amount of the $10,850.00 check as evidenced by the deposit slip, but this charge was a legitimate and customary one, and would be of no probative force relative to a knowledge that there were no funds in the McAllen State Bank sufficient to pay the check thereon, which check was the initial act in the transaction. There is an entire absence of proof that the First State Bank of Franklin knew or participated in any check kiting.
Appellant failed to take the stand and offered no proof relative *Page 248 
to such knowledge upon the part of such bank. A distinction is attempted to be made herein, and such deposit slip is contended to evidence a special and not a general deposit. This was not a deposit for any specific purpose, but was placed to appellant's credit as money that he would have a right to withdraw for any purpose. The bank gave him full credit therefor, and he exercised such by drawing the same and converting it into exchange on the same day. Evidently the bank was no one's agent save itself, and the amount was instantly available to appellant, and he utilized the same by converting it into exchange on the same day as received by him.
The trial court gave a comprehensive charge of his own on the matter charged, and four special charges were requested by appellant, such charges embracing every defense suggested by the evidence, as well as some not shown by the testimony; and we think that no serious objections were leveled thereat, but every presentable defense was incorporated in such charge, and evidently disbelieved by the jury, as evidenced by their verdict.
Finding no error in the record, the judgment will be affirmed.
 ON MOTION FOR REHEARING.