T. B. ARMENTROUT V. THE STATE.

No. 20687. Delivered December 13, 1939.
Rehearing Denied January 17, 1940.

The opinion states the case.

*Joe E. Kelly* and *R. D. Blaydes,* both of Fort Stockton, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is theft of cattle. The punishment assessed is confinement in the state penitentiary for a term of two years.

The uncontradicted testimony shows that on or about the 5th day of January, 1939, appellant killed and sold a jersey heifer calf to a meat market in Fort Stockton. The hide was identified by both Mr. Sullivan, the owner, and Mr. Warnock, a neighbor. Mr. Warnock testified that he saw appellant drive a cow and the calf in question toward his home. Appellant said he thought the calf was his own; that if it was Mr. Sullivan's, he merely made a mistake. It will thus be seen that an issue of fact was raised which the jury decided adversely to appellant's contention.

Appellant contends that the trial court erred in declining to sustain his motion to quash the indictment because he claimed it was found and returned by an illegally constituted grand jury. It appears from the record that appellant had already been arrested, charged by complaint with the offense and was out on bond at the time that the indictment was returned against him. This court has many times held that an accused may not, under such circumstances, challenge the for-

mation of the grand jury by a motion to quash. The duty rests upon him, in cases of this nature, to make a challenge to the array under Art. 361 C. C. P. As stated in Gentry v. State, 290 S. W., 542:

"* * If, under such circumstances—that is, he being under arrest or under bond charged by complaint with an offense— his right to challenge the array would be waived unless exercised by him before the grand jury was impaneled. * *"

See, also, Hunter v. State, 108 Tex. Crim. Rep., 142 and the authorities there cited.

By a proper bill of exception and on motion for new trial appellant complains because the hide of the stolen animal, which was introduced in evidence upon the trial and inspected by the jury, was upon the request of the jury taken into the jury-room and there again inspected by them. It appears from the motion and the record that appellant's defense was that he had made a mistake if he had killed and butchered the injured person's calf. He stated that he had a calf which looked very much like Mr. Sullivan's. The State introduced this hide in evidence. Upon their retirement the jury in discussing the same came to some differences on the markings of the animal and requested the sheriff to bring the hide to their room for inspection. This the sheriff did. The question for us to determine is whether or not it was error for the jury to again view this hide after their retirement. That the hide was admissible as original evidence is too well settled to admit of argument. See Ledbetter v. State, 32 S. W. 903, holding a hide admissible as demonstrative evidence under very similar circumstances. See also Vol. 18, Tex. Juris., Sec. 206, p. 334. The rule seems also well settled that the jury can take with them into the juryroom various articles over which there might be argument. In such cases the authorities hold that unless there is proof in the record that the jury used such evidence in a manner inconsistent with its original presentation, then no error is committed. An analysis of the evidence adduced upon the motion for a new trial shows that the purpose of the jury was merely to settle the question of the possibility or probability of defendant's making a mistake. Consequently no error is presented. See the authorities cited in Vol. 42 Tex. Juris, Sec. 328, p. 418.

Appellant also complains because of alleged misconduct of the jury, asserting that they took into consideration the failure of the defendant to ask for a suspension of sentence. It appears that upon the trial, appellant's own attorney asked

him whether or not he had ever been convicted in Pecos County of any offense. He replied in the negative. The district attorney then interrogated him as to whether or not he had ever been convicted in this State or any other state of a felony. Appellant's attorney objected to the question and the objection was sustained. Upon their retirement the jury at first stood 9 to 3 for conviction. There arose some question as to whether or not appellant could get a suspension of sentence and a request was sent to the trial judge to inform them on this matter. He recalled them into court and instructed them that they were not authorized to suspend appellant's sentence, inasmuch as no such request had been made by him. The jury then returned to the jury room and shortly thereafter agreed on two years' imprisonment. .It is appellant's contention that the evidence adduced upon the hearing of the motion relative to this misconduct clearly shows that the question as to whether or not he should be convicted at all was made to depend upon whether he had ever been convicted of a felony, and that the purpose of the jury in asking the trial judge if he were entitled to such suspension of sentence was to determine whether or not sentence could be suspended. That if it could, then they would hold him not guilty at all, but if it could not, then they would proceed upon the assumption that he had elsewhere been convicted of a felony and then hold him guilty for the theft of the calf.

The most that can be said for his contention is that the evidence is conflicting. Two of the three jurors introduced clearly stated that their only purpose in asking the trial judge whether or not appellant's sentence could be suspended was so that they might vote for a suspension if such were the case. Appellant not having applied for a suspension of sentence, he was not entitled to it, and the court was correct in so informing them because that was the law, and the jury is entitled to be advised as to the law of the case. However, the evidence heard by the court on the motion was conflicting, and we would not be authorized to set aside the court's finding on such an issue of fact.

By bill of exception number two, appellant complains of the following occurrence. After the State's witness, Warnock had testified for the State, he was asked on cross-examination by appellant's attorneys what his social relations had been with the defendant and his family. He replied that his family and the Armentrout family had been visiting back and forth and had tried to be good neighbors. He stated that he had never

gone down and stayed at Armentrout's home or eaten dinner, but had tried to be good neighbors. That he thought his wife had visited in Armentrout's home. Appellant's counsel then asked the witness if he had not tried to rent the place from under the defendant through Mr. Shaw, the owner. This Warnock denied. Thereafter while the defendant was testifying in his own behalf he was asked by his counsel if Mr. Warnock or his wife had ever visited in his home and whether or not he knew that Warnock had attempted to rent the place from Mr. Shaw where he (defendant) resided. The State objected to these questions and the objections were sustained by the court. the defendant not being allowed to answer. The bill states that if the defendant had been permitted to answer the question, he would have stated that neither Sam Warnock or his wife had ever visited in his home, though they lived within a few hundred yards from him. That within his own knowledge Warnock had on more than one occasion tried to rent from the owner, Shaw, the land which he, defendant, had in his possession by virtue of a rental contract with Shaw. The bill is multifarious and not entitled to consideration. Moreover it appears to us that it was an attempt to impeach the witness on an immaterial matter. But if it should be conceded that there was ill will and animosity on the part of Warnock toward appellant, it appears that it did not cause Warnock to color his testimony so that it might appear more favorable toward the State, because Warnock testified that he saw appellant driving Sullivan's cattle, including the animal in question, toward his, appellant's home, and appellant, while testifying in his own behalf, admitted driving the cattle at the time and place mentioned by Warnock, but contended that if he did butcher Sullivan's yearling, he did so through mistake, believing at the time that it was his own animal. Under these circumstances, we think the bill fails to reflect error.

All other matters complained of by appellant have been duly considered by us and are deemed to be without merit.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, Judge.
In his motion for rehearing appellant reiterates his conten-

tion that he was indicted by an illegal grand jury, and, further, that under the circumstances revealed by the record, he had the right to attack the legality of the grand jury by a motion to quash the indictment.

It appears from bill of exception No. 1 that Judge Montague of the 112th District Court of Pecos County impaneled the grand jury for the January term of the court on the 2nd day of January, 1939, and that later he discharged said grand jury for the term. During the same term of court Judge Montague resigned and a special judge was elected by the bar to preside during the remainder of the term of the court. During the same term of court appellant was charged by complaint in the justice court with the offense of theft of cattle, and, upon waiving an examining trial, entered into bond for his appearance before the district court. This complaint was filed after Judge Montague had discharged the grand jury for the term. On the 23rd of January the special judge elected by the bar to continue the term of court impaneled a grand jury which consisted of ten men who had been members of the grand jury which Judge Montague had discharged. Upon finding that two members of the grand jury failed to appear, the judge impaneled ten men who had served originally upon the grand jury and two other men who had not served upon the original grand jury. It appears that the twelve men, after being duly sworn and impaneled, retired to deliberate and thereafter returned an indictment into open court charging the appellant with theft of cattle, being the same offense with which he was charged by complaint in the justice court with having committed.

It appears from the record that prior to the trial of the case against appellant the sheriff who had served during the term of court at which appellant was indicted had died. Whether Judge Montague ordered that the grand jury be reassembled is not made to appear by direct testimony. However, a deputy sheriff testified that he had received orders to summon the grand jury to appear on the 23rd of January. He did not recall that Judge Montague gave him the order. He testified, further, that he summoned the twelve grand jurors who had served originally on the grand jury and that only ten appeared. The clerk of the court testified that no minute entry had been made setting aside the order discharging the grand jury and directing that they be reassembled. Under the circumstances, appellant insists that he was indicted by an illegal grand jury.

Art. 372, C. C. P., provides: "A grand jury discharged by the court for the term may be reassembled by the court at any

time during the term. If one or more of them fail to reassemble, the court may complete the panel by impaneling other men in their stead in accordance with the rules provided in this chapter for completing the grand jury in the first instance."

Art. 358, C. C. P., reads as follows: "Before the grand jury has been impaneled, any person may challenge the array of jurors or any person presented as a grand juror. In no other way shall objections to the qualifications and legality of the grand jury be heard. Any person confined in jail in the county shall upon his request be brought into court to make such challenge."

Art. 359, C. C. P., provides: "By the array of grand jurors is meant the whole body of persons summoned to serve as such before they have been impaneled."

Art. 360, C. C. P., reads as follows: "A grand juror is said to be 'impaneled' after his qualifications have been tried and he has been sworn. By 'panel' is meant the whole body of grand jurors."

Art. 361, C. C. P., provides: "A challenge to the array shall be made in writing for these causes only:

"1. That those summoned as grand jurors are not in fact those selected by the jury commissioners.

"2. In case of grand jurors summoned by order of the court, that the officer who summoned them had acted corruptly in summoning any one or more of them."

Art. 506, C. C. P., reads as follows: "A motion to set aside an indictment or information shall be based on one or more of the following causes, and no other:

"1. That it appears by the records of the court that the indictment was not found by at least nine grand jurors, or that the information was not based upon a valid complaint.

"2. That some person not authorized by law was present when the grand jury were deliberating upon the accusation against the defendant, or were voting upon the same."

Appellant's attack goes to the organization of the grand jury after it had been recalled. If it should be conceded that the organization was not in strict compliance with statutory requirements because of the fact that no order was shown to have been made by Judge Montague setting aside the order discharging the grand jury and directing that they be reassembled, the opinion is expressed that appellant's objection came

too late when he undertook at a subsequent term of court to attack the legality of the grand jury by a motion to quash. In this connection it is not clear that there was any irregularity of sufficient gravity in reimpaneling the grand jury to warrant us in holding that it was an illegally constituted body. See Millikin v. State, 296 S. W. 547. As already pointed out, ten men composing the grand jury which had been originally impaneled appeared in answer to a summons by the deputy sheriff. Two others who had served on said grand jury, although summoned by the deputy sheriff, failed to appear. Under the circumstances, the panel was completed by calling two other men to take the places of those who failed to appear. Thereafter the entire grand jury was sworn and impaneled. At all events, prior to the time that the grand jury was reassembled and impaneled appellant had been arrested and, upon waiving an examining trial, had given an appearance bond. It was therefore incumbent upon him, if he desired to question the legality of the grand jury, to challenge the array. This he failed to do. He is in no position to excuse himself by saying that he was not aware that the grand jury was to be impaneled. Being under a bond to appear before the district court, it was incumbent upon him to keep himself advised as to the proceedings of the court during that term. Having been arrested, appellant was not within the exception to the operation of Articles 358 and 506, which exception is to the effect that the accused may by motion to quash the indictment take advantage of the same question which would have been available in the challenge to the array provided he had not been arrested or the offense had not been committed at the time of the impaneling of the grand jury which returned the indictment against him. Powell v. State, 269 S. W. 443, and authorities cited. Another exception may be found in the decisions holding that the act of purported grand juries composed of more or less than twelve men may be attacked even after conviction upon the ground that such bodies are not in fact grand juries, but attempted to function as such in violation of Art. 5, Sec. 13, of the State Constitution. Powell v. State, supra; Ex parte Reynolds, 34 S. W. 120. This exception has no application to the present case. A third exception to the application of the provisions of Arts. 358 and 506 may be found where the record shows an arbitrary disregard of the statutory provisions relating to the manner of selecting the grand jurors. The instant case fails to fall in this exception. In view of our discussion, we are constrained to adhere to the conclusion expressed in the original opinion.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.