**Juan Torres MUNIZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 61073.**

Court of Criminal Appeals of Texas, En Banc.

July 18, 1984.

J. Charles Whitfield, Houston, for appellant.

Carol S. Vance, Former Dist. Atty., Alvin M. Titus and Larry Urquhart, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

This is an appeal from a conviction for burglary of a habitation. Punishment was assessed at twenty-five years.

Appellant's first three grounds of error challenge the trial court's denial of a motion to quash the indictment due to discrimination in the grand jury selection process. In his fourth ground of error, which we shall discuss first, appellant contends there was no probable cause for his arrest and any evidence derived therefrom should have been excluded. We find appellant's grounds of error to be without merit and accordingly affirm his conviction.

In order to review appellant's claim that there was no probable cause for his arrest a brief recitation of the facts is appropriate. Appellant stands convicted of an October 6, 1977, burglary of the home of Paul Goodson. A police officer called to Goodson's residence testified that the front door of the home had pry marks on it consistent with forced entry by use of a screwdriver.

The record reflects that on October 21, 1977, at approximately 12:45 p.m., shortly after interviewing a resident-witness to a burglary in the 10500 block of Beinhorn, Officer W.E. Spies, an 18 year veteran of the Village Police Department, observed two males fitting the description of the burglars, given to him by the witness, three blocks away from the reported burglary. Spies testified that after the men saw the police officer in his patrol car they "started throwing things out of their pocket" and were walking "at a fast walk." Spies stopped the men and asked them what they were doing in the neighborhood and they responded that they were experiencing car trouble. After asking for identification, the two men replied they had both lost their billfolds while they were climbing roofs while working as roofers. Spies then offered to assist the men with their car and drive them to their automobile parked in a church lot one block away. When the offi-

cer asked the appellant to start the car, appellant first replied that he had no car keys. The officer testified that appellant was feeling for his pocket when the police officer stopped him and did a quick pat-down search for weapons. The police officer found the car keys in appellant's pocket. Appellant then said, "Oh, I didn't know I had two sets." At this point appellant and Ruiz were arrested and taken to the Village Police Department. Spies and Officer R.A. Stephens returned to the location where appellant Ruiz had first been sighted and found two watches and a screwdriver which were thrown down by the appellant. The screwdriver, evidence of the October 6th burglary, was admitted into evidence at trial. The watches apparently had been stolen in a third unrelated burglary.

Appellant's contention that there was no probable cause to justify his arrest is without merit. While "the inarticulate hunch, suspicion, or good faith of an arresting officer is insufficient to constitute probable cause," *Brown v. State*, 481 S.W.2d 106 (Tex.Cr.App.1972), the U.S. Supreme Court recognized in *Sibron v. New York*, 392 U.S. 40, 66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1967), that "deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest."

The test of probable cause for an arrest without a warrant was stated by the U.S. Supreme Court in *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), as:

> "Whether at that moment the facts and circumstances within the officer's knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrested person] had committed or was committing an offense."

A review of several similar cases is instructive in evaluating whether appellant's activity constituted probable cause.

*Thompson v. State*, 533 S.W.2d 825 (Tex. Cr.App.1976), dealt with a case in which officers observed two individuals in a high crime area where many prowlers had been recently reported. The defendant was carrying what appeared to the officers as a woman's suitcase. This was deemed sufficient probable cause to justify a momentary stop and request for identification. Once stopped, the defendant provided suspicious and inconsistent name and address information and the officers observed in plain view suspicious suitcase tag information. This justified the ultimate arrest and search of the pair.

In *Castillo v. State*, 494 S.W.2d 844 (Tex. Cr.App.1973), an opinion written by Judge Roberts, it was shown that while patrolling an alley at approximately 12:35 a.m., police officers "observed an automobile parked near the alley. There had been several burglaries in the area recently. Two men were seen exiting the alley, walking at a rapid pace toward the parked vehicle. That car drove off and the officers followed. They soon stopped the car and sought identification." *Id.* at 845. Once this investigatory stop had been made, the police officer received inconsistent information from the two and observed that the appearance of the suspects was consistent with criminal activity. This provided justification to detain them until a second police unit could be "dispatched back to the alley and the officers discovered a side of beef, still cold, an adding machine and a calculator, all on one side of the alley. The back door to a meat company had been forced open." *Id.* at 846. At this point, the defendant and his companion were arrested.

Presiding Judge Onion discussed a situation involving an experienced police officer "patrolling in the downtown business area on a routine building check" in *Baity v. State*, 455 S.W.2d 305 (Tex.Cr.App.1970), *cert. denied*, 400 U.S. 918, 91 S.Ct. 180, 27 L.Ed.2d 158 (1970). At 4:56 a.m., the officer "observed a man enter the alley ... then suddenly turn back out of the alley." *Id.* at 306. The officer "sped up his vehicle and observed the man on Eighth Street walking fast with his coat pulled up tight

... walking real fast." *Id.* The officer recognized the person as one with a record of arrests for theft and burglary and at this point made an investigatory stop. When the defendant turned in response to the officer's call, the officer then observed in plain view a burglary tool and some other object which proved to be a coin box. The officer then detained the defendant until he determined that a nearby cafeteria had been burglarized. At this point, the defendant was placed under lawful arrest.

■ In the instant case, the following facts support a finding that there was probable cause to arrest appellant:

(1) Appellant and Ruiz matched the description given to Officer Spies by the victim of a recent burglary in the same neighborhood where appellant was found;

(2) Appellant and Ruiz were found walking *three blocks away* from the reported burglary;

(3) After appellant and Ruiz saw the police officer in his patrol car, they began "throwing things out of their pocket" and began walking quickly;

(4) After stopping the two and asking for identification, appellant and his companion replied that they had *both* lost their billfolds while climbing roofs as roofers, an explanation which appeared to be questionable;

(5) When the officer attempted to assist the men in fixing their automobile and requested the car keys to start the car, appellant replied that he had no keys. In a subsequent patdown search for weapons, Officer Spies found a set of keys in appellant's pocket;

(6) Upon returning to the site where appellant and Ruiz had discarded items from their pockets, Officer Spies recovered a screwdriver and two watches.

Under the facts in the instant case, we find that the officer had probable cause to arrest appellant without a warrant. Moreover, under Art. 14.03, V.A.C.C.P. (Vernon's 1977), which allows the warrantless arrest of a person by a police officer "found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony ..." such an arrest is authorized. Appellant's fourth ground of error is overruled.

■ The three remaining grounds of error all challenge the trial court's denial of a motion to quash the indictment due to discrimination in the grand jury selection process. In *Muniz v. State,* 573 S.W.2d 792 (Tex.Cr.App.1978), we interpreted Art. 19.-27,[1] V.A.C.C.P., to mean that the array must be challenged at the first opportunity which ordinarily means when the grand jury is impaneled. If challenge at this early date is impossible, as when the offense occurs after the grand jury is impaneled, the array can be attacked in a motion to quash the indictment before trial commences. *Ex Parte Covin,* 161 Tex.Cr.R. 320, 277 S.W.2d 109 (1955). If the defendant has an opportunity to challenge the array when it was impaneled, however, and does not do so, he may not challenge it at a later date. *Armentrout v. State,* 138 Tex.Cr. App. 238, 135 S.W.2d 479 (1939). The Court in *Muniz* overruled the defendant's ground of error because at the time the grand jury was impaneled, the defendant was in custody, represented by counsel and aware that he was the object of its scrutiny. The Court held that he had the opportunity to challenge the array of grand jurors at the time of impanelment and his failure to do so waived the right to later challenge by a motion to quash the indictment. *Muniz,* supra at 796.

■ In the instant case the record reflects that the offense was committed in

---

1. Art. 19.27, V.A.C.C.P., provides:
"Before the grand jury has been impaneled, any person may challenge the array of jurors or any person presented as a grand juror. In no other way shall objections to the qualifications and legality of the grand jury be heard. Any person confined in jail in the county shall upon his request be brought into court to make such challenge."

October, 1977, and that appellant had been in custody from December 10, 1977. A complaint was filed in this cause on February 12, 1978, and an indictment was returned by the February grand jury on March 21. At appellant's hearing on his motion to quash, which was filed June 6, evidence revealed that the February grand jury was selected on January 23 and began service on February 7. Noting that appellant was in custody almost two months before the grand jury was impaneled and that his challenge may have been untimely, this Court abated this appeal on November 10, 1981, for the trial court to determine whether appellant was represented by counsel, either retained or appointed, prior to the impaneling of the grand jury that returned the indictment. An evidentiary hearing held on June 3, 1983, revealed that counsel's representation of appellant began on February 13, 1978, at which time counsel appeared with appellant concerning a probable cause hearing. J.C. Whitfield, appellant's attorney, testified that his representation of appellant began at that February 13 hearing, some six days after the grand jury began service. Therefore, in light of *Muniz,* supra, we find that appellant's challenge to the array in his motion to quash the indictment was timely.

Noting that the challenge to the grand jury array was timely, we must now determine if appellant has established a prima facie case of discrimination in the grand jury selection process in Harris County.

The United States Supreme Court has long recognized that "it is a denial of the equal protection of the laws to try a defendant of a particular race or color under an indictment issued by a grand jury ... from which all persons of his race or color have, solely because of that race or color, been excluded by the State...." *Hernandez v. State,* 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954). "Because discrimination on the basis of race in the selection of

members of a grand jury thus strikes at the fundamental values of our judicial system and our society as a whole, the Court has recognized that a criminal defendant's right to equal protection of the law has been denied when he is indicted by a grand jury from which members of a racial group purposely have been excluded." *Rose v. Mitchell,* 443 U.S. 545, 556, 99 S.Ct. 2993, 3000, 61 L.Ed.2d 739 (1978).

At the hearing on the motion to quash the indictment, appellant introduced the testimony of two Anglo members of the grand jury who indicted appellant; Dr. Robert Carp, political science professor at the University of Houston and author of several articles on grand jury selection in Harris County; and Dr. Tatcho Mindiola, professor of sociology at the University of Houston.

The two grand jury members testified that no Mexican-Americans served with them on the grand jury; there was evidence, however, that one Mexican-American female was on the list of prospective grand jury members. The record is unclear if she was excused from service or simply was not chosen.

Dr. Carp testified that he studied data concerning composition of Harris County grand juries from 1969 through 1976. A study of grand juries between 1969–1972 [2] revealed that the racial composition of the grand juries were:

82% Anglo

15% Black

3% Mexican-American

The 1970 U.S. Bureau of Census statistics reflect the racial composition of Harris County as:

69% Anglo

20% Black

11% Mexican-American

Appellant contends that this 8% disparity in the Mexican-American composition of

2. The study which formed the basis of Dr. Carp's testimony contained data from a questionnaire mailed to all persons who served on Harris County grand juries between 1969 and 1972. Of the 271 questionnaires mailed to the grand jurors, 156 (58%) were returned and included in the analysis. See, "The Harris County Grand Jury—A Case Study," 12 Hous.L.Rev. 90, 92 (1974).

the grand jury establishes prima facie evidence of the systematic exclusion of Mexican-Americans in the grand jury selection process in Harris County; and thus, in accordance with the Supreme Court's decision in *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), this case should be reversed.

In *Castaneda,* supra, Defendant Partida showed that the total population of Hidalgo County was 79.1% Mexican-American but that over an 11 year period only 39% of the persons who served on the grand jury were Mexican-American. The Supreme Court held that that mathematical disparity was enough proof to establish a prima facie case of discrimination against Mexican-Americans in the Hidalgo County grand jury selection process. In its decision the Court established guidelines for proving that an equal protection violation has occurred in the context of grand jury selection. The burden rests on the defendant, the Court said, to show:

(1) the group allegedly underrepresented is a recognizable, distinct class;

(2) the group is underrepresented by comparing the proportion of the group in the total population to the proportion called to serve over a significant period of time;

(3) the selection system utilized is susceptible of abuse or is not racially neutral.

*Id.* at 495, 97 S.Ct. at 1280.

[4] In the instant case, the evidence introduced by appellant at the motion to quash hearing fails to satisfy the second requirement set forth in *Castaneda.* Appellant has met the evidentiary requirements outlined in the first and third step of *Castaneda.* It is undisputed that Mexican-Americans are a clearly identifiable class. *Hernandez,* supra. In addition, while the Texas grand jury selection "key man system" [3] has come under close judicial scrutiny, it has been upheld by the U.S. Supreme Court. See, e.g., *Carter v. Jury Commission,* 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970); *Akins v. Texas,* 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed.2d 1692 (1945); *Smith v. Texas,* 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940). Nevertheless, the Court has noted that the system is susceptible of abuse as applied. *Castaneda,* supra 430 U.S. at 498, 97 S.Ct. at 1282.

The statistical evidence introduced by appellant fails to satisfy the second step of *Castaneda* inasmuch appellant has failed to satisfy his burden of proof that a racial disparity existed between 1969 through 1976. Specifically, Dr. Carp noted at the motion to quash hearing that his testimony was based on research of grand jury selection in Harris County between 1969 through 1976 and that the results of such study had been published in two University of Houston law review articles. Dr. Carp admitted during cross examination that the subsequent study reflected an *increase* in the representation of blacks, women and Mexican-Americans on Harris County grand juries. At the pre-trial hearing, Dr. Carp testified that while there were two types of disparities, racial and economic, "*the racial disparities have improved somewhat in recent years,* but the difference in education and income have actually gotten worse." He added that the latest data compiled in 1976 reflected that "that there certainly more blacks and Mexican-Americans on the Grand Jury and also more women."

In his study,[4] which is cited in appellant's brief, Dr. Carp wrote,

3. The "key man system" relies on jury commissioners to select prospective grand jurors from the community at large. The procedure begins with the state district judge's appointment of from three to five persons to serve as jury commissioners. Art. 19.01, V.A.C.C.P. The commissioners then "shall select not less than 15 nor more than 20 persons from the citizens of the county" to compose the list from which the actual grand jury will be drawn. Art. 19.06,

V.A.C.C.P. When at least 12 of the persons on the list appear in court pursuant to summons, the district judge proceeds to "test their qualifications." Art. 19.21, V.A.C.C.P. The qualifications are set out in n. 5 infra.

4. See Carp & Rowland, *The Commissioner Method of Selecting Grand Jurors: A Case of A Closed and Unconstitutional System,* 14 Hous.L.Rev. 371, 373 (1977).

"Such research reveals that between 1973 and mid-1975 Harris County grand juries have to some degree become more representative of the local community. For example, the percentage of Blacks has increased from 15 to 18 percent, *the number of Mexican Americans has jumped from 3 to 11 percent,* and the percentage of female grand jurors has increased from 22 to 33 percent." See 14 Hous.L.Rev. 371, 373 (1977) (Emphasis added).

The study reveals, therefore, that between 1973 and 1975 there was *no disparity* between the percentage of Mexican-Americans in the Harris County community and those selected for grand jury service.

We find that appellant has failed to satisfy his burden of proof. Based upon the evidence presented at the pre-trial hearing, the trial court was correct in overruling appellant's motion to quash the indictment. Appellant's ground of error is overruled.

■ In grounds of error number two and three concerning the systematic exclusion of low income citizens and blue collar workers, appellant's reliance on the cases cited in his brief is misplaced. *Thiel v. Southern Pacific Company,* 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946), and *Labat v. Bennett,* 365 F.2d 698 (5th Cir.1966), *cert. denied,* 386 U.S. 991, 87 S.Ct. 1303, 18 L.Ed.2d 334 (1967), involved "an unwritten courthouse rule" where court officials automatically exempted daily wage earners from service on *petit jury* panels. In *Dumont v. Estelle,* 377 F.Supp. 374 (S.D.Tex. 1974) the freeholder/householder requirement for jury service found in Art. 339, V.A.C.C.P. (1925) was challenged.[5] There is no like challenge in the instant cause. Appellant's grounds of error are overruled.

Judgment is affirmed.

CLINTON and TEAGUE, JJ., concur in the result.

---

**5.** In 1969, the freeholder-householder requirement was completely deleted from the qualifications for grand jury service.