FILED IN
COURT OF CRIMINAL APPEALS

July 9, 2015

ABEL ACOSTA, CLERK

PD-0212-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/9/2015 10:21:26 AM
Accepted 7/9/2015 10:46:38 AM
ABEL ACOSTA
CLERK

**No. PD-0212-15**

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

**CHRIS FURR,
APPELLANT,**

**v.**

**THE STATE OF TEXAS,
APPELLEE.**

---

ON APPEAL FROM THE THIRTEENTH COURT OF APPEALS
IN CAUSE NO. 13-14-00287-CR

---

**BRIEF FOR THE STATE**

---

Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@co.nueces.tx.us

Attorney for Appellee

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................................ ii

SUMMARY OF THE ARGUMENT ............................................................. 1

ARGUMENT ............................................................................................... 2

**Reply Point.**
**The Thirteenth Court of Appeals properly affirmed the trial court's order denying Furr's motion to suppress, based on sufficient evidence to show reasonable suspicion for the detention and justification for the frisk.** ................................................................................................ 2

    **I. Facts.** ........................................................................................... 2
    **II. Detention.** ................................................................................... 3
    **III. Reasonable Suspicion.** ............................................................ 4
        *A. Anonymous Tip.* ...................................................................... 5
        *B. Contemporaneity.* ................................................................... 6
        *C. Location.* ................................................................................ 7
        *D. Flight from Police.* ................................................................. 7
        *E. Nervousness, Intoxication, and Demeanor.* ............................ 9
    **IV. The Frisk.** ................................................................................ 11

PRAYER ................................................................................................... 14

RULE 9.4 (i) CERTIFICATION ................................................................ 15

CERTIFICATE OF SERVICE .................................................................... 15

# INDEX OF AUTHORITIES

## Cases

*Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921 (1972). ..............................7

*Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412 (1990)...............................6

*Brendlin v. California,* 551 U.S. 249, 127 S.Ct. 2400 (2007)........................3

*Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000)...................... 11

*State v. Castleberry*, 332 S.W.3d 460 (Tex. Crim. App. 2011). ....................3

*Cockrum v. State,* 758 S.W.2d 577 (Tex. Crim. App. 1988)..........................9

*Derichsweiler v. State*, 348 S.W.3d 906 (Tex. Crim. App. 2011).............. 4, 5

*Fairow v. State*, 943 S.W.2d 895 (Tex. Crim. App. 1997).......................... 10

*Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382 (1991)...............................3

*Ford v. State*, 158 S.W.3d 488 (Tex. Crim. App. 2005). ...............................4

*Glazner v. State*, 175 S.W.3d 262 (Tex. Crim. App. 2005). ........................ 11

*Griffin v. State*, 215 S.W.3d 403 (Tex. Crim. App. 2006). ..................... 11-13

*Hiibel v. Sixth Judicial District Court of Nevada,* 542 U.S. 177, 124 S.Ct. 2451 (2004)...............................................................................................3

*Illinois v. Wardlow*, 528 U.S. 119, 120 S. Ct. 673 (2000)......................5, 7-9

*State v. Kerwick*, 393 S.W.3d 270 (Tex. Crim. App. 2013). ..................... 5, 8

*Matthews v. State*, 431 S.W.3d 596 (Tex. Crim. App. 2014)......................4-6

*Muniz v. State*, 672 S.W.2d 804 (Tex. Crim. App. 1984). ............................7

*Navarette v. California*, 134 S. Ct. 1683 (2014). .................................... 5, 6

*O'Hara v. State*, 27 S.W.3d 548 (Tex. Crim. App. 2000). ........................... 11

*Pyles v. State*, 755 S.W.2d 98 (Tex. Crim. App. 1988)...................................7

*Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889 (1967). ...............................7

*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868 (1968)............................. 4, 8, 9, 11

NO. PD-0212-15

| | | |
|---|---|---|
| CHRIS FURR, | § | |
| Appellant, | § | |
| | § | IN THE TEXAS COURT |
| V. | § | |
| | § | OF CRIMINAL APPEALS |
| THE STATE OF TEXAS, | § | |
| Appellee. | § | |

**BRIEF FOR THE STATE**

TO THE HONORABLE COURT OF APPEALS:

**SUMMARY OF THE ARGUMENT**

The Thirteenth Court of Appeals properly considered the totality of the circumstances, including the anonymous tip that Furr and his companion were using drugs, Furr's furtive behavior and flight upon the approach of police officers, Furr's nervousness, sweating and failure to answer, and his appearance of being under the influence of some drug, and the likelihood that he was armed and dangerous in view of his refusal to answer when questioned as to whether he had a weapon and his need for protection while doing drugs in a homeless shelter; such that it properly found sufficient evidence to show reasonable suspicion for a detention, and sufficient indication that Furr may have been armed and dangerous to justify a *Terry* frisk.

## ARGUMENT

### Reply Point.
**The Thirteenth Court of Appeals properly affirmed the trial court's order denying Furr's motion to suppress, based on sufficient evidence to show reasonable suspicion for the detention and justification for the frisk.**

### I. Facts.

Testimony of the two officers at the suppression hearing may be summarized as follows:

The police received an anonymous tip that two men were using drugs in a specific location, the Mother Teresa shelter, and were dressed in a particular manner. (RR pp. 6, 14-15, 17-18, 27-28, 33) The area in question is a high crime, high drug area. (RR p. 13, 20-21)

Officers proceeded to that location and discovered two men in the area matching the description. (RR pp. 6-7)

When a patrol officer passed the suspects walking together, he noticed them looking back at him. (RR p. 29)

When the two men were then approached by police, Furr left the company of the other and walked into the Mother Teresa shelter, doing so in a suspicious way by repeatedly looking over his shoulder at the police. (RR pp. 8, 29-30)

Furr was nervous and sweating when approached by the police in the shelter (RR pp. 8-9, 17), he failed to respond when asked if he had any weapons, and he appeared to be "out of it" and under the influence of some drug. (RR pp. 18, 22) One of the officers then detained Furr and did a pat-down of his outer clothes, during which he discovered a crack pipe. (RR pp. 9-10)

## II. Detention.

Unlike an investigative detention or an arrest, consensual police-citizen encounters do not implicate Fourth Amendment protections. *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011) (citing *Florida v. Bostick,* 501 U.S. 429, 434-35, 111 S.Ct. 2382 (1991)). An officer is just as free as anyone to stop and question a fellow citizen. *Castleberry*, 332 S.W.3d at 466 (citing *Bostick,* 501 U.S. at 434-35). The officer may, without reasonable suspicion, request identification and information from a citizen. *Castleberry*, 332 S.W.3d at 466 (citing *Hiibel v. Sixth Judicial District Court of Nevada,* 542 U.S. 177, 185, 124 S.Ct. 2451 (2004) and *Bostick,* 501 U.S. at 434-35). However, an encounter is no longer consensual when an officer, through physical force or a showing of authority, has restrained a citizen's liberty. *Castleberry*, 332 S.W.3d at 466 (citing *Brendlin v. California,* 551 U.S. 249, 254, 127 S.Ct. 2400 (2007)).

To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of proving that a detention occurred, and only after the defendant shows that the police detained him without a warrant does the burden shift to State to establish reasonable suspicion to justify the detention. *See Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex. Crim. App. 2011) (citing *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

In the present case, the evidence fails to show that the present encounter escalated into a detention until the frisk itself occurred. Accordingly, anything occurring before the frisk may be considered both in connection with the "reasonable suspicion" analysis as well as the "armed and dangerous" analysis discussed below.

### III. Reasonable Suspicion.

A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *See Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868 (1968); *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014); *Derichsweiler,* 348 S.W.3d at 914.

In determining whether an officer has reasonable suspicion to detain, the reviewing court should look at the totality of the circumstances. *Matthews*, 431 S.W.3d at 603; *Derichsweiler,* 348 S.W.3d at 914. Although some circumstances may seem innocent in isolation, they will support an investigatory detention if their combination leads to a reasonable conclusion that criminal activity is afoot. *Matthews*, 431 S.W.3d at 603; *Derichsweiler,* 348 S.W.3d at 914.

The Supreme Court approves a "commonsense approach" to questions involving reasonable suspicion, looking to "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Navarette v. California*, 134 S. Ct. 1683, 1690 (2014). In that regard, "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125, 120 S. Ct. 673 (2000); *see also State v. Kerwick*, 393 S.W.3d 270, 276 n.27 (Tex. Crim. App. 2013) (quoting *Wardlow*).

### A. Anonymous Tip.

In particular, under appropriate circumstances, an anonymous tip can demonstrate "sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop." *Navarette*, 134 S. Ct. at 1688 (quoting

5

*Alabama v. White,* 496 U.S. 325, 327, 110 S.Ct. 2412 (1990)). However, to support reasonable suspicion based on an anonymous tip, there must be some indication that the caller is credible or that his information is reliable. *White,* 496 U.S. at 329; *Matthews*, 431 S.W.3d at 603.

In the present case, there being no evidence concerning the credibility of the caller, reasonable suspicion depends upon other facts supporting the reliability of the allegation that Furr was using drugs.

### B. Contemporaneity.

The Supreme Court has indicated that one factor weighing in favor of the veracity of an anonymous tip is that it was relatively contemporaneous with the observation of the criminal activity in question. *See Navarette*, 134 S. Ct. at 1689. Contrary to the Thirteenth Court of Appeals' conclusion, the circumstances of the present encounter indicate that the observation of drug use was relatively contemporaneous with the report to police and their arrival on the scene.

Specifically, it is reasonable from the present record to assume, based on the prompt response to the dispatch, the fact that the two males were still dressed as indicated, together as indicated, and in the general location of the homeless shelter as indicated, that the tipster was recounting a recent, relatively contemporaneous occurrence of drug use.

*C. Location.*

The location of the suspected criminal activity in a "high crime area" is a factor contributing to reasonable suspicion. *Wardlow*, 528 U.S. at 124 (citing *Adams v. Williams,* 407 U.S. 143, 144, 147–148, 92 S.Ct. 1921 (1972)). In the present case, the fact that it was also a "high drug area" further contributes to the reliability of the tip.

*D. Flight from Police.*

The Supreme Court has said that "deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea." *Sibron v. New York,* 392 U.S. 40, 66, 88 S.Ct. 1889 (1967); *see also Muniz v. State*, 672 S.W.2d 804, 806 (Tex. Crim. App. 1984) (quoting *Sibron*); *Pyles v. State*, 755 S.W.2d 98, 109 (Tex. Crim. App. 1988) (characterizing furtive movements and gestures, as well as flight at the approach of strangers or law officers, as "strong indicia" of a mens rea consistent with guilt).

Specifically, the Supreme Court has given special weight to unprovoked flight from the police as a form of evasive behavior that will raise reasonable suspicion sufficient to justify a temporary detention. *See Wardlow*, 528 U.S. at 124-25. "[Flight] is not necessarily indicative of

wrongdoing, but it is certainly suggestive of such." *Wardlow*, 528 U.S. at 125; *Kerwick*, 393 S.W.3d at 276 (quoting *Wardlow*).

In the present case, it would have been unusual for two law-abiding citizens walking together and passed by a patrol car to look back at that patrol car after it passed and for one of them then to abruptly part company and go in another direction upon the arrival of the police officer. This is clearly an indication that Furr was altering his course and retreating back into the shelter based on the presence of law enforcement. His furtive glances at the police during the retreat only contributed to the reasonable suspicion that he had something to hide from them.

As in *Terry*, the present case involves "a series of acts, each of them perhaps innocent in itself, but which taken together warranted further investigation." *Terry*, 392 U.S. at 22. In *Terry*, the Supreme Court summarized the suspect's conduct as follows:

> There is nothing unusual in two men standing together on a street corner, perhaps waiting for someone. Nor is there anything suspicious about people in such circumstances strolling up and down the street, singly or in pairs. Store windows, moreover, are made to be looked in. But the story is quite different where, as here, two men hover about a street corner for an extended period of time, at the end of which it becomes apparent that they are not waiting for anyone or anything; where these men pace alternately along an identical route, pausing to stare in the same store window roughly 24 times; where each completion of this route is followed immediately by a conference between the two men on the corner; where they are joined in one of these conferences by a third man who leaves swiftly; and where the

8

two men finally follow the third and rejoin him a couple of blocks away.

392 U.S. at 22-23. As in *Terry*, in the present case as well, a single glance back over the shoulder might have been innocent enough, but changing course on arrival of the police and repeatedly looking back at them, first when an officer passed in a patrol car, and then repeatedly while walking away on foot, is suspicious and abnormal conduct for an innocent pedestrian--at least suspicious enough to justify further investigation.

*E. Nervousness, Intoxication, and Demeanor.*

As with flight in particular, nervous or evasive behavior in general is a pertinent factor in determining reasonable suspicion. *Wardlow*, 528 U.S. at 124; *see also Cockrum v. State,* 758 S.W.2d 577, 581 (Tex. Crim. App. 1988) (defendant's demeanor, in the form or nervous or furtive behavior, may indicate guilty knowledge).

In the present case, Furr's nervousness and his unresponsiveness to questioning were suspicious behavior tending to show guilty knowledge and generally added to reasonable suspicion to detain.

In addition, the officer's characterization of Furr as being "out of it" and under the influence of some drug, was likewise suspicious behavior which tended to corroborate the tip concerning recent drug use. In this regard, a witness can testify to what has been termed a "shorthand

rendition," which amounts to an opinion based on the perception of an event that would otherwise be difficult or impossible for the witness to describe. *Fairow v. State*, 943 S.W.2d 895, 900 (Tex. Crim. App. 1997). In the present case, testimony that Furr was "out of it" or on something may be just such a shorthand rendition of the officer's perception that Furr was still high on drugs, based on his general demeanor and other factors that would be difficult or impossible to describe in detail, but which an experienced police officer would clearly recognize to be signs of intoxication.

Finally, although the Thirteenth Court of Appeals suggests that sweating is normal in South Texas, the extent to which Furr was sweating may not have been normal under the circumstances. Like his appearance of being "out of it" and on some drug, Furr's sweating was apparently significant enough to get the attention of the officer as being out of the ordinary. While the officer may not have characterized it as excessive or profuse, he took notice of it as unusual, considering all of the particular circumstances of the encounter.

Together, these facts were sufficient to raise a reasonable suspicion that Furr was engaged in criminal activity, and specifically that the anonymous tip concerning drug use was accurate.

10

## IV. The Frisk.

An officer is justified in conducting a frisk or pat-down search of a detained suspect if, in addition to reasonable suspicion of criminal activity, a reasonably prudent man in the circumstances would be warranted in the belief that the suspect is armed and dangerous. *Terry*, 392 U.S. at 27; *Glazner v. State*, 175 S.W.3d 262 (Tex. Crim. App. 2005); *O'Hara v. State*, 27 S.W.3d 548, 552 (Tex. Crim. App. 2000). The additional intrusion that accompanies a *Terry* frisk is only justified where the officer can point to specific and articulable facts which reasonably lead him to conclude that the suspect might possess a weapon. *Carmouche v. State*, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000) (citing *Terry,* 392 U.S. at 26–27). However, whether the facts also justify a frisk or pat-down for officer safety is determined on an objective standard based on a reasonably cautious person, not on whether the particular officer at the scene was actually afraid of the suspect. *See Griffin v. State*, 215 S.W.3d 403, 409-10 (Tex. Crim. App. 2006); *O'Hara,* 27 S.W.3d at 551.

A police officer's reasonable belief that a suspect is armed and dangerous may be predicated on the nature of the suspected criminal activity. *Carmouche*, 10 S.W.3d at 330 (citing *Terry*, 392 U.S. at 27-28).

11

Specifically, this Court has recognized that "it is objectively reasonable for a police officer to believe that persons involved in the drug business are armed and dangerous." *Griffin*, 215 S.W.3d at 409. In *Griffin*, this Court took notice of an FBI document attributing a high number of officer deaths to investigation of "drug-related matters." 215 S.W.3d at 409 n. 7.

In the present case, the tip that Furr had been using drugs was corroborated by his flight and furtive behavior, as well as the appearance that he was still high at the time the police encountered him at the shelter.

Moreover, although there was no evidence that Furr was a dealer in addition to being a user, this does not significantly detract from the danger posed to the officers. Drug culture is such that it is inherently difficult to separate the users from the dealers, and it is unlikely that either will be open about their respective roles. Moreover, the users deal with the sellers, carry cash to a drug deal to buy their drugs, and are in like need of protection from a drug deal turned sour. When the police confront someone who has been observed with drugs in a high crime area, they rarely will know that person's level of involvement in the drug trade and should not be prevented from patting the suspect down simply because they do not have enough evidence to identify him as a dealer.

In addition, another relevant factor showing heightened danger in the present case is the location of the drug use and the encounter. Unlike a private residence or motel room, a homeless shelter is generally less private and more open to public or communal view of all activities of life, including illicit ones such as drug use. This loss of privacy necessarily entails greater risks and the need for increased protection. Common sense suggests that someone staying in a shelter and using drugs there would have a greater need to protect his stash from others, and thus a greater need to be armed, than someone doing drugs in the relatively safe confines of his or her private residence or motel room.

Also, the fact that Furr did not initially respond to Officer Ayala's question as to whether he had a weapon suggested that he might well have been armed and dangerous at the time, and thus justified a pat-down search.

Finally, the fact that Furr appeared to be still under the influence of the drug contributed to the sense of danger caused by his altered mood and unpredictability. It is reasonable to infer that someone not in their right mind is more likely to become impulsive and violent. Though it may not increase the chance that Furr was armed, this factor would logically increase the second frisk factor of being "armed *and dangerous*." *Griffin*, 215 S.W.3d at 409 (emphasis added).

For all these reasons, the trial court properly found that the detention and frisk were valid and denied Furr's motion to suppress, and the Thirteenth Court of Appeals properly affirmed the trial court's judgment.

**PRAYER**

For the foregoing reasons, the State respectfully requests that the judgment of the Thirteenth Court of Appeals be affirmed.

Respectfully submitted,

/s/ *Douglas K. Norman*
_____
Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@co.nueces.tx.us

## RULE 9.4 (i) CERTIFICATION

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this brief, excluding those matters listed in Rule 9.4(i)(1), is 2,807.

/s/ *Douglas K. Norman*
_____
Douglas K. Norman

## CERTIFICATE OF SERVICE

This is to certify that a copy of this brief was e-mailed on July 9, 2015, to Appellant's attorney, Mr. Travis Berry, travisberrylaw@gmail.com, and to the State Prosecuting Attorney.

/s/ *Douglas K. Norman*
_____
Douglas K. Norman

15