

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00256-CR
### NO. 02-15-00390-CR
### NO. 02-15-00391-CR

ULYSSE MAJORO                                      APPELLANT

V.

THE STATE OF TEXAS                                  STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
TRIAL COURT NOS. 1381961D, 1328531D, 1328530D

----------

## MEMORANDUM OPINION[1]

----------

In four issues, Appellant Ulysse Majoro appeals (1) his convictions for two counts of aggravated sexual assault of a child under the age of 14 and (2) the trial court's revocation of his deferred adjudication community supervision for evading arrest and endangering a child. *See* Tex. Penal Code Ann. § 22.041(c)

---

[1]*See* Tex. R. App. P. 47.4.

(West 2011); §§ 22.021(a)(1), 22.021(a)(2)(B), 38.04(b)(2)(A) (West Supp. 2015). We affirm.

## BACKGROUND

At approximately 3:00 a.m. on Monday, August 18, 2014, City of Euless Police Officer Catherine Meador, responding to a report of a noise disturbance, found a Jeep parked in a residential driveway emitting loud music.[2] Because heavy tinting prevented Officer Meador from seeing through the vehicle window, Officer Meador knocked on the back window after she approached the Jeep. The back passenger on the driver's side opened the door to the vehicle, and Officer Meador observed one female and two males, one of which was the Appellant, all in various stages of undress.[3] Shortly thereafter, Officer Allie Galloway arrived as backup.[4]

---

[2]Officer Meador was responding to a 9-1-1 call made by a woman who reported that loud music had been coming from a red vehicle parked in front of her neighbor's house for two hours. The Jeep was parked in the driveway as described by the caller. The recording of the 9-1-1 call was admitted into evidence at trial.

[3]Officer Meador described Appellant as wearing basketball shorts that were pulled down to the point that his boxer shorts were exposed. She testified that the female was wearing jean shorts and underwear that were "pulled down to just above her knees." The second male passenger was described by Officer Meador as wearing khaki shorts and no shirt.

[4]At some point, a third police officer also arrived to assist.

Officer Meador asked the individuals to step out of the vehicle so that she could investigate what was going on, and she began to question Appellant.[5] Appellant did not have his identification with him, but he stated that he was 17 years old and that the trio had been "smoking and drinking" that evening.[6] The second male stated that he was 19 years old. While questioning the female, Officer Meador began to suspect that she was not being truthful. The girl was nervously fidgeting, shaking her legs, and looking down at the ground while speaking, plus she equivocated as to what her birthday was. At first the girl claimed that she was 17, but she then provided at least two different years associated with her birthdate, neither of which would have been correct if she had been 17 years old at the time. As Officer Meador later discovered, the girl was 13 years old.[7]

Appellant told Officer Meador that he was "trying to do something earlier" with the female, and according to Officer Meador, in response to her follow-up inquiry as to what that "something" was, Appellant admitted that he had been

[5]Videos taken by dashboard cameras in Officer Meador's patrol car and Officer Galloway's patrol car were admitted by the trial court.

[6]Appellant later explained that they had been drinking Sprite.

[7]Officer Meador and the male officer that had arrived at the scene transported the female to her nearby home and spoke to her mother, who informed them that her daughter was 13 years old. During this time, Appellant and the other male remained at the scene with Officer Galloway and a third officer.

trying to have sex with the girl.[8]  Officer Meador testified that at some point, Appellant indicated that he believed the girl was 16 years old.  Officer Meador described her questioning of Appellant and the others at the scene as a temporary investigative detention, during which time none of the three were free to leave, nor were they under arrest.[9]

Once the police officers determined the correct age of the girl involved, Appellant was placed under arrest and later charged with aggravated sexual assault of a child under the age of 14.

Appellant moved to suppress his statements to Officer Meador that he was trying to have sex with the female discovered in the vehicle with him and that he believed the female was 16 years old.  After the trial court denied the motion, Appellant entered a plea of guilty to the charges of aggravated sexual assault of a child under the age of 14.

## DISCUSSION

### I. Denial of pre-trial motions relating to jury selection.

In his first and second issues, Appellant complains of the trial court's denial of and alleged refusal to hear his "Motion to Inspect Jury Selection Records

[8]Appellant's answer to Officer Meador's follow-up question was inaudible on the dash-camera video recording.

[9]Officer Meador testified that she detained the occupants of the vehicle based upon the original 9-1-1 call reporting a noise disturbance, the time of the morning, the fact that the three individuals she had discovered in the backseat of the Jeep were partially undressed, and the fact that the young girl could not answer what her birthdate was.

4

Pursuant to 28 U.S.C.[A.] § 1867(f)" and "Motion to Dismiss due to Systematic Exclusion of Particular Class from Grand Jury."

Appellant's "Motion to Inspect Jury Selection Records Pursuant to 28 U.S.C.[A.] § 1867(f)," filed on June 8, 2015, requested that the court allow him to "inspect jury selection records." In his motion, Defendant relied exclusively upon federal law, including provisions of the Jury Selection and Service Act of 1968. *See* Jury Selection and Service Act of 1968, ch. 121, 82 Stat. 54 (codified as amended at 28 U.S.C.A. §§ 1861–75 (West 2006 & Supp. 2015)).

Appellant's "Motion to Dismiss Due to Systematic Exclusion of Particular Class from Grand Jury," filed eight days later, argued that the use of the "key man" system of selecting the grand jury violated the sixth amendment, Appellant's due process rights, and Appellant's rights to equal protection because the system was "arbitrary" and "discriminatory."

During a pretrial hearing, while Appellant was considering whether to accept a plea agreement offered by the State, the following exchange occurred between Appellant and the trial court:

> THE COURT: So you want the 15?
>
> [APPELLANT]: Yeah. But also, . . . I want to bring up some issues about some motions I have filed, and I would like to discuss them today . . . before I take the deal.
>
> THE COURT: Discuss it with me or your lawyer?
>
> [APPELLANT]: With you.
>
> THE COURT: Okay. What's that?

5

[APPELLANT]: I have a motion—well, I filed a motion to inspect [grand jury] selection.

. . . .

THE COURT: Right. What is it about the grand jury you want to know?

[APPELLANT]: Well, I feel like there are—scrutinize some classes of people, some black folks, or some type of race. And, you know, I filed that motion, and I never got a response to it. I don't know if you denied it, or if you—if you accepted it, but I never got the response.

THE COURT: I did receive your motion. It's been filed. It's in the Court's records here.

[APPELLANT]: Yes, sir.

THE COURT: I'm going to deny that motion because the grand jury was selected legally, and I know that every grand jury I have has different races of all kinds.

[APPELLANT]: But, you see, in my motion I state that about how the kind of key man system was working in Tarrant County.

THE COURT: Right.

[APPELLANT]: And they are excusing members of the—of my peers and that . . . violates my Sixth Amendment and Fourteenth Amendment of the constitutional [sic] rights. And I was just wanting to bring that up.

And I, also, I wanted to file a motion of inspection of grand jury selection, so I could figure out the pool and see how y'all did it correctly.

THE COURT: Okay. Well, I'm going to deny that motion.

[APPELLANT]: I have my appeal ready just in case you deny it, unfortunately.

6

THE COURT: Okay. Anything else?

[DEFENSE COUNSEL]: Nothing from the Defense.

[APPELLANT]: I'm sorry. Also—also, another motion was, motion to dismiss due to systematic . . . exclusion of a particular class of grand jury selection.

. . . .

THE COURT: Right, and I'll find that the grand jury system that was in place at the time of this indictment was legal and valid and I'll deny your motion.

Appellant did not accept the plea offer and elected to proceed to a jury trial. At trial, the State first called the 9-1-1 dispatcher that had answered the call reporting the noise disturbance and then called Officer Meador. After Officer Meador's testimony and outside the presence of the jury, the issue of the jury selection motions came up again, and once again Appellant explained to the trial court that he felt that the grand jury selection system excluded "black people that own businesses or black people in general, or females, or any . . . black folks[.]" On voir dire examination by his attorney, Appellant testified, "So, I was just wondering if you can file—if you can approve of the motion to inspect the grand jury so I can prove . . . for the second motion which is dismissing systematic exclusion of a particular class." Appellant advised the trial court that he was "thinking" about subpoenaing Senator John Whitmire to testify, but he acknowledged that he had not asked the Court "for subpoena power" or subpoenaed any witnesses at that time.

7

Upon direct inquiry by the trial judge,[10] Appellant's counsel declined to adopt Appellant's two motions regarding the grand jury. The trial court judge then explained that he was "not going to entertain pro se motions that [were] not adopted by counsel[.]"

Appellant's statement of his first issue stated: "The trial court erred in denying Appellant's Motion to Inspect Grand Jury Selection Records and Motion to Dismiss Due to Systematic Exclusion of Particular Class from Grand Jury."[11] But in arguing this issue he combined it with issue two and only provided record citations and legal authority in support of his second issue—whether the trial court erred in "not permitting [A]ppellant to present evidence in support of his motions[.]"[12] If a party provides no argument or legal authority to support its position, the appellate court may properly overrule the issue or point as

[10]The trial court judge was a visiting judge and not the judge who presided over the pretrial hearing.

[11]Appellant later restated his first issue as: "The trial court erred in overruling appellant's motion to inspect grand jury selection records and motion to dismiss because of systematic exclusions of a particular class."

[12]In fact, the only part of his argument that potentially addresses issue one is his statement that the key man system was "outlawed" after his indictment was issued. The applicable provision of the code of criminal procedure was amended to remove the option of a key man system as of September 1, 2015, but repeal or amendment of a statute does not necessarily mean that the prior statute was unconstitutional. *See* Tex. Code Crim. Proc. Ann. art. 19.01 (West Supp. 2015) (providing that "[t]he district judge shall direct that 20 to 125 prospective grand jurors be selected and summoned . . . in the same manner as for the selection and summons of panels for the trial of civil cases in the district courts."); *see also, e.g.*, *Wessely Energy Corp. v. Jennings*, 736 S.W.2d 624, 627–28 (Tex. 1987) (evaluating constitutionality of repealed statute).

8

inadequately briefed. Tex. R. App. P. 38.1(i); *Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011) (citing cases), *cert. denied*, 132 S. Ct. 2712 (2012).

Nevertheless, we have considered the Appellant's first issue and we find it unpersuasive. Although the key man system[13] of which Appellant complains came under close judicial scrutiny in the past, it was repeatedly upheld as facially constitutional. *See Carter v. Jury Comm'n*, 396 U.S. 320, 337, 90 S. Ct. 518, 527 (1970); *Akins v. Texas*, 325 U.S. 398, 407, 65 S. Ct. 1276, 1281 (1945); *Smith v. Texas*, 311 U.S. 128, 130–31, 61 S. Ct. 164, 165 (1940); *Muniz v. State*, 672 S.W.2d 804, 809 (Tex. Crim. App. 1984). Appellant has provided no evidence with which we could determine that the key man system was unconstitutional as applied in this case. *See Castaneda v. Partida*, 430 U.S. 482, 495, 97 S. Ct. 1272, 1280 (1977) (holding that it is the defendant's burden to show (1) the group allegedly underrepresented is a recognizable, distinct class; (2) the group is underrepresented by comparing the proportion of the group in the total population to the proportion called to serve over a significant period of time; and (3) the selection system utilized is susceptible of abuse or is not racially neutral);

---

[13]The "key man system" relied on jury commissioners to select prospective grand jurors from the community at large. A state district judge would appoint three to five persons to serve as jury commissioners. Act of May 26, 2001, 77th Leg., R.S., ch. 344, 2001 Tex. Reg. 630 (amended 2015) (current version at Tex. Code Crim. Proc. Ann. art. 19.01). The commissioners then selected "not less than 15 nor more than 40 persons from the citizens of the county to be summoned as grand jurors." Act of May 26, 2001, 77th Leg., R.S., ch. 344, 2001 Tex. Gen. Laws 630, *repealed by* Act of June 28, 2015, 84th Leg., R.S., ch. 929, § 21(1), 2015 Tex. Gen. Laws 3201, 3206.

*see also Muniz*, 672 S.W.2d at 809 (applying the *Castaneda* analysis).[14]  For these reasons, we overrule his first issue.

In his second issue, Appellant contends that he was denied the opportunity to present evidence and argue his motions.  But in so arguing, Appellant does not direct us to any legal support for his argument.  In fact, in all of the cases upon which Appellant relies, the court held that a hearing was *not* required. *See, e.g.*, *LaChance v. Erickson*, 522 U.S. 262, 266, 118 S. Ct. 753, 756 (1998) (holding that a meaningful opportunity to be heard does not include a right to make false statements with respect to charged conduct); *Ex parte Geiken*, 28 S.W.3d 553, 560 (Tex. Crim. App. 2000) (holding that an inmate is entitled to the opportunity to be heard but is not entitled to a live hearing before the making of a release decision by the Parole Board); *Calderon v. State*, 75 S.W.3d 555, 558–59 (Tex. App.—San Antonio 2002, pet. ref'd) (op. on reh'g) (holding that a hearing was not required in order for a trial court to extend a period of community supervision).

But Appellant is correct with regard to the general principle that "due process requires notice and a meaningful opportunity to be heard."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 1493 (1985).

---

[14]Furthermore, Appellant's motion to inspect jury selection records relies upon provisions of federal procedural law that are not applicable to state court criminal proceedings.  *See* 28 U.S.C.A. § 1861 (West 2006) (declaring policy applicable to "all litigants in Federal courts"); *Id.* § 1867(a), (f) (West 2006) (providing procedure for challenging the federal government's compliance with selection of a federal grand jury)*.*

The question here is whether Appellant was denied such an opportunity. And the answer is no. In both instances, the trial judges listened to his statements, but in neither circumstance did Appellant explicitly request a hearing on the matter. Neither of the motions contained a request or demand for a hearing.[15] Nor does the record demonstrate that Appellant ever implicitly requested a hearing by requesting that the court provide an opportunity for him to present evidence or testimony, for example.

The court of criminal appeals has held that "to complain about failing to obtain a hearing or other inquiry, the party must have requested the hearing unless the rule, statute, or other law conferring the right to a hearing provides that the trial court has a duty to sua sponte conduct one." *McGinn v. State*, 961 S.W.2d 161, 165 (Tex. Crim. App.), *cert. denied*, 525 U.S. 967 (1998); *see also Crane v. State*, 786 S.W.2d 338, 348 (Tex. Crim. App. 1990) (holding that defendant preserved nothing for review because he had failed to request a hearing challenging pretrial identification procedures); *Stewart v. State*, No. 02-02-00200-CR, 2003 WL 1894628, at *1 (Tex. App.—Fort Worth Apr. 17, 2003, pet. ref'd) (mem. op., not designated for publication) (holding defendant did not preserve for review complaint that the trial court failed to conduct a hearing to

---

[15]We additionally note that Appellant's counsel declined to adopt these pro se motions at trial, and as such, the trial court was free to disregard the motions. *Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007) ("[A] trial court is free to disregard any pro se motions presented by a defendant who is represented by counsel.").

address his objections to the State's search and seizure of his property). Appellant has not provided us, nor have we found, any authority suggesting that Appellant's motions triggered a sua sponte duty of the trial court to conduct a hearing or inquiry, and we decline to impose one. *See, e.g.*, Tex. Code Crim. Proc. Ann. art. 46B.004(c) (West Supp. 2015) (imposing a duty on the trial court to "determine by informal inquiry whether there is some evidence that . . . defendant may be incompetent to stand trial" on suggestion that the defendant is incompetent); *see also Stewart*, 2003 WL 1894628 at *1 (holding there was no requirement that the trial court sua sponte conduct a hearing outside the presence of the jury when a defendant objects to the introduction of the fruits of a search). By failing to request a hearing, Appellant has preserved nothing for our review. We therefore overrule his second issue.

## II. Denial of motion to suppress

In his third issue, Appellant argues that the trial court erred in denying his motion to suppress statements made to Officer Meador prior to arrest.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at

12

673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim App. 2007); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

Appellant's argument is that his statement that he was trying to have sex with the female found in the vehicle with him and his statement that he thought she was 16 years old were made while he was in police custody. Thus, he argues, the statements are inadmissible because they were given prior to Appellant receiving *Miranda* warnings. It is undisputed that Appellant was not given his *Miranda* warnings until after he made the contested statements. Statements obtained during custodial interrogation are inadmissible unless the State "demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."[16]  *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966).

The State argues that the police were not yet required to give *Miranda* warnings to Appellant because he was not in custody, but instead was being held

---

[16]The Texas Code of Criminal Procedure expressly delineates the requirements of *Miranda* by requiring officers to inform people of their rights prior to custodial interrogation in order for resulting statements to be admissible. Tex. Code Crim. Proc. Ann. art. 38.22, § 3 (West Supp. 2015).

as part of a temporary investigative detention. An officer may briefly detain a person based on the officer's reasonable suspicion that that person has committed, is committing, or is about to commit a crime. *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S. Ct. 3138, 3150 (1984); *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884 (1968). "Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer*, 368 U.S. at 439, 104 S. Ct. at 3150. We agree with the State that Appellant was being held as part of an investigative detention and was not in custody at the time Appellant's statements were made.

A person is in custody if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318, 322–324, 114 S. Ct. 1526, 1528–30 (1994)). The court of criminal appeals has recognized four factors as relevant to determining custody: (1) probable cause to arrest, (2) subjective intent of the police, (3) focus of the investigation, and (4) subjective belief of the defendant. *Id.* (citing *Meek v. State*, 790 S.W.2d 618, 621–22 (Tex. Crim. App. 1990)). Factors two and four are "irrelevant except to the extent that they may be manifested in the words or actions of law enforcement officials; the custody determination is based entirely on objective circumstances." *Id.* (citing *Stansbury*, 511 U.S. at 323, 114 S. Ct. at 1528–29).

Additionally, the court of criminal appeals has recognized at least four general situations which may constitute custody: "(1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave." *Id.* at 255 (citing *Shiflet v. State*, 732 S.W.2d 622, 629 (Tex. Crim. App. 1985)).

With regard to the first, second, and third situations, any restriction upon movement "must amount to the degree associated with an arrest as opposed to an investigatory detention." *Id.* Officer Meador asked Appellant to get out of the Jeep and he complied. He and the other two occupants were then questioned outside the vehicle. Officer Meador and the other two officers present did not handcuff or otherwise physically restrain Appellant, nor did they tell him he could not leave. Neither the first situation—physical deprivation of freedom of action in a significant way—nor the second situation—a communication to the suspect that he could not leave—occurred in this case.

However, Appellant appears to argue that the third situation—when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted—applies

15

here.[17]   Under the circumstances of this case—an early morning 9-1-1 dispatch in response to a noise complaint which led to the discovery of a Jeep with three, partially-undressed teenagers inside—Officer Meador was justified in asking questions to determine what was going on.   Indeed, Appellant does not contest that this situation provided reasonable suspicion to do so.   *See Berkemer*, 468 U.S. at 439, 104 S. Ct. at 3150–51 (providing that, during an investigative detention, "the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.").    But while Officer Meador was justified in asking investigatory questions, Appellant was not obliged to respond.   *See id.* ("But the detainee is not obliged to respond.").

This situation is analogous to a common traffic stop where the temporarily-detained driver is not considered in custody for purposes of *Miranda*.  *Campbell v. State*, 325 S.W.3d 223, 233 (Tex. App.—Fort Worth 2010, no pet.) (citing *Berkemer*, 468 U.S. at 440, 104 S. Ct. at 3150–51 (1984)); *see also Hernandez v. State*, 107 S.W.3d 41, 47–48 (Tex. App.—San Antonio 2003, pet. ref'd) ("The brief questioning and field sobriety tests occurred along the side of a public road, where [the driver] would not have felt completely at the mercy of the police and

---

[17]Appellant's argument is essentially comprised of one sentence: "Because the detention of [A]ppellant when far beyond a traffic-type stop, he was not free to leave, and the police were questioning him and others, the statements made by [A]ppellant were made while he was in custody, and since he was not given the Miranda warning, such statements should have been suppressed."

16

would have expected to be able to proceed along his way if he passed the field sobriety tests."). Here, no evidence suggests that the situation extended beyond a temporary inquiry such that a reasonable person would be led to believe that his freedom of movement had been significantly restricted, nor was there any suggestion that Appellant was under arrest, as opposed to being temporarily detained, at the time he made the statements. *See Campbell*, 325 S.W.3d at 233 (holding that defendant was not in custody even though the investigating officer took the defendant's car keys before asking the defendant questions to investigate a possible driving while intoxicated offense). Therefore, the third situation was not present in this case.

Looking at the fourth *Dowthitt* situation, the final query is whether Officer Meador had probable cause to arrest Appellant and did not advise him that he was free to leave. *Dowthitt*, 931 S.W.2d at 255. This fourth situation "does not automatically establish custody; rather, custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest." *Id.* While Appellant's argument relies upon Officer Meador's testimony that Appellant was not free to leave while she was questioning him, the inquiry does not stop there. For this situation to apply, the officer's knowledge of probable cause must be communicated to the suspect. Appellant points us to no evidence that Officer Meador's knowledge of probable cause was conveyed to him. *Id.* Without evidence that Officer Meador's intent was manifested to

17

Appellant through her words or actions, her subjective intent and his subjective belief are irrelevant. *Stansbury*, 511 U.S. at 323, 114 S. Ct. at 1528–29; *Dowthitt*, 931 S.W.2d at 254.

For these reasons, we hold that Appellant was not in custody at the time he made his statements that he believed the female discovered with him in the Jeep was 16 years old and that he was trying to have sex with her. We therefore overrule Appellant's third issue and affirm the trial court's denial of his motion to suppress.

## III. Revocation of community supervision

At the time he was charged with aggravated sexual assault of a child under the age of 14, Appellant was on community supervision related to two offenses for which he received deferred adjudication in 2013—evading arrest and endangering a child. The State filed petitions to proceed to adjudication in both cases on the grounds that Appellant's aggravated sexual assault offenses constituted new offenses in violation of the terms of community supervision, that Appellant failed to complete required community service as a condition of community supervision, and, in the child endangerment case, that Appellant failed to pay the monthly community supervision fee. Following the trial court's denial of his motion to suppress, Appellant pleaded true to the allegations of the petitions to proceed to adjudication.

In his fourth issue, Appellant argues that the trial court's revocation of community supervision related to his convictions for evading arrest and

18

endangering a child should be reversed if the aggravated assault convictions are reversed. Because we have overruled Appellant's first three issues and affirm the trial court's judgment, we overrule Appellant's fourth issue.[18]

## CONCLUSION

Having overruled Appellant's issues, we affirm the judgment of the trial court.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL: WALKER, MEIER, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 16, 2016

---

[18]We note that Appellant would not be entitled to a reversal of the revocation of community supervision even if we had not overruled Appellant's first three issues. Appellant pleaded true to all of the State's allegations in both causes but only contests the aggravated sexual assault offense as a ground for revocation. Only one sufficient ground for revocation is necessary to support the trial court's revocation of community supervision. *Jones v. State*, 571 S.W.2d 191, 193 (Tex. Crim. App. [Panel Op.] 1978). Thus, the trial court's revocation of Appellant's community supervision in both cases could also be upheld for failure to perform community service, and, in the child endangerment case, his failure to pay the required fees.